Argued January 7, decided January 13, 1914.

## GIBSON v. KAY, STATE TREASURER.

(137 Pac. 864.)

**Mandamus—Requisites of Writ—Legal Conclusions.**

1. In *mandamus* to compel the payment of a warrant for services rendered for the corporation commissioner, a statement in the writ of the duties of the corporation commissioner as defined by Laws of 1913, page 668, consisting of excerpts therefrom or legal conclusions therefrom, was superfluous, as the court takes judicial notice of the laws enacted by the legislature.

> [As to judicial notice of laws, and when proof is necessary, see note in 11 Am. Dec. 780. As to judicial notice of ordinances, see note in 5 Ann. Cas. 614. As to judicial notice of federal statutes, see note in 19 Ann. Cas. 395.]

**Attorney General—Powers and Duties.**

2. Under Article VII, Section 17, of the Constitution, as it first existed, providing for the election of prosecuting attorneys, to be the law officers of the state, and Article VII, Section 2, as amended, directing that the judicial system remain as at present constituted until otherwise provided by law, and Sections 2666–2672, L. O. L., creating the office and prescribing the duties of the attorney general, the powers of the attorney general at common law are by statute and the Constitution vested either in that officer or in the district attorneys.

**States—Officers—Right to Employ Counsel—Corporation Commissioner.**

3. So far as they concern litigation for the state or in which the state is interested, the duties for which an attorney was employed by the corporation commissioner might be performed by either the attorney general or the district attorneys, and the corporation commissioner had no right to substitute an appointee of his own to perform these duties.

**States—Officers—Right to Employ Counsel—"Clerks, Stenographers, and Assistants."**

4. The corporation commissioner cannot, at the expense of the state, employ as assistant an attorney to ascertain facts and the means of providing them, or to give legal counsel and advice; the terms "clerks, stenographers, and assistants," in Laws of 1913, page 670, Section 6, authorizing the commissioner to appoint such clerks, stenographers and assistants as may be necessary, not being comprehensive enough to include attorneys.

**Officers—Eligibility—Holding More Than One Office.**

5. The legislature may prescribe a new meaning for the term "office," as used in Article II, Section 10, of the Constitution, prohibiting the holding of more than one lucrative office at a time, or apply it to a position not hitherto within its scope.

**Officers—Eligibility—Holding More Than One Office—"Office."**

6. Under Laws of 1913, page 670, Section 6, authorizing the corporation commissioner to appoint assistants necessary to properly discharge the duties of his office, and Section 7, requiring the commissioner and other employees to take oath to discharge the duties of their respective offices, one of the appointees holds an "office" within Article II, Section 10, of the Constitution, forbidding one from holding more than one lucrative office at a time.

**Officers—Eligibility—Holding More Than One Office.**

7. An appointee of the corporation commissioner, pursuant to Laws of 1913, page 668, to which the commissioner was authorized to make the appointment, is within Article IV, Section 30, of the Constitution, providing that no senator or representative shall, during the time for which he may have been elected, be appointed to any civil office of profit which shall have been created during his term.

**Constitutional Law—Distribution of Governmental Powers—Executive Power—Encroachment by Member of Legislature.**

8. The functions of the corporation commissioner and his assistants pertain to the administrative department of the government, in which a member of the legislative department is forbidden to participate by Article III, Section 1, of the Constitution, providing that the powers of the government shall be divided into three separate departments, the legislative, executive and judicial, and that no person charged with duties in one shall exercise functions of another department, except as expressly provided in the Constitution.

**States—Warrants—Conclusiveness.**

9. The audit of the Secretary of State and the drawing of his warrant in pursuance thereof for the compensation of an appointee of the corporation commissioner do not bind the state treasurer.

En Banc. Original proceeding in the Supreme Court by V. L. Gibson for *mandamus* to compel Thomas B. Kay, State Treasurer, to pay a certain warrant issued by the Secretary of State for legal services said to have been performed by Claude McColloch under direction of the corporation commissioner, the claim having been assigned to petitioner.

WRIT DISMISSED.

For petitioner there was a brief over the names of *Mr. Alfred A. Hampson* and *Mr. R. A. Watson,* with an oral argument by *Mr. Hampson.*

For the state there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr.*

*James W. Crawford,* Assistant Attorney General, and *Mr. J. A. Benjamin,* Second Assistant Attorney General, with an oral argument by *Mr. Andrew M. Crawford.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Invoking the original jurisdiction of this court in such cases, the petitioner sued out a writ of *mandamus* against the defendant to compel him to pay a warrant issued by the Secretary of State for services alleged to have been performed by Claude McColloch, under appointment by the corporation commissioner, and afterward assigned to the plaintiff. After reciting the official character of the corporation commissioner and of the defendant, as State Treasurer, the writ proceeds with a prolix statement of the duties of the corporation commissioner as defined by Chapter 341 of the Laws of Oregon for 1913. These consist either of excerpts from that statute or legal conclusions to be drawn therefrom. All of these are superfluous and unnecessary, for, without pleading them, the court takes judicial notice of the laws enacted by the legislative branch of the government. In addition thereto, the writ declares that: "The performance and proper discharge of said duties above particularly described during all the times herein mentioned necessitated a vast amount of work and labor, and made it actually necessary for said corporation commissioner to have the assistance in the performance and discharge thereof of someone experienced in current business methods, and particularly in corporate and partnership methods of organization and transaction of business, and skilled and read in the rules and precedents of the common law, and statutes and decisions of the courts of this and other states and of the United States; that during all the times herein mentioned one

Claude McColloch possessed the experience, skill, knowledge and all the qualifications particularly above described in paragraph 7, and on the 10th day of November, 1913, said corporation commissioner employed and appointed said Claude McColloch to render him assistance in the performance and discharge of said duties hereinabove particularly described, and promised and agreed to pay him therefor at the sum and rate of $125 per month, or proportionate parts thereof, payments to be made out of the corporation fund, as the same is created and described in and by said Chapter 341, Laws for 1913; that said Claude McColloch accepted said employment and appointment, and on said day duly qualified therefor as provided by said Chapter 341, Laws for 1913, and inclusive of said day, and thereafter during said month of November, 1913, rendered such assistance to said corporation commissioner pursuant to said terms of employment; and there became due and owing to said Claude McColloch therefor out of said fund the sum of $87.50.'' The remainder of the document consists of a history of making a verified claim for the services, and an audit thereof by the Secretary of State, and his drawing a warrant, the payment of which was refused by the defendant, the State Treasurer. By denials and allegations the return contends that the services mentioned therein were those incumbent upon the attorney general and district attorneys of the state, for whom the corporation commissioner could not substitute an appointee of his own; further, that the claimant at all the times mentioned was a state senator representing Baker County in the legislature, whose term would not expire until November, 1914, under which condition he is forbidden by the Constitution to hold at the same time the other lucrative office of assistant to the corporation commissioner; and, finally, that a law creating the corporation commissioner,

and authorizing him to make the appointment under which McColloch was acting, was passed by the legislative assembly of which the latter was a member, on account of which he was prohibited from being appointed thereto, the position having been created during his term as such senator. The official character of the appointee as senator, and his participation as a legislator in the enactment of the law, were admitted by the reply.

2. Under Article VII, Section 17, of the state Constitution, as it first existed, it was provided that "there shall be elected by districts comprised of one or more counties, a sufficient number of prosecuting attorneys, who shall be the law officers of the state, and of the counties within their respective districts, and shall perform such duties pertaining to the administration of law and general police as the legislative assembly may direct."

Section 2 of the amended Article VII directs that "the courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law."

No law changing the duties and authority of district attorneys having been enacted, they yet remain as defined by the original Constitution. The office of attorney general was created and his duties prescribed by Sections 2666 to 2672, L. O. L. His general functions are defined in Section 2670, as follows: "The attorney general, at the request of the Governor, Secretary of State, Treasurer, Superintendent of Public Instruction, or any of the said parties, shall, upon the breach thereof, prosecute any official bond or contract in which the state is interested. He shall, when requested to do so, by either of said officers, give his opinion in writing upon any question submitted to him in which the State of Oregon may have an interest;

68 Or.—38

and he shall, when requested, give legal advice to any of the above officers, or to the superintendent of the state insane asylum or superintendent of the state penitentiary in all matters relating to their official business, and shall, when requested, give his written opinion upon any question of law to either house of the legislature. He shall, when requested so to do, prepare contracts, bonds, forms, and other writings which may be requested, for the use of the state or any department or officer thereof. He shall appear, prosecute, or defend for the state all suits, causes, or proceedings in the Supreme Court in which the state is a party or interested; and he shall when requested by any state board or board of trustees, or by the Governor or the Secretary of State or the State Treasurer, appear, prosecute, or defend any action, suit, matter, cause, or proceeding in any court in which the state is a party or interested; and he shall, when requested, consult and advise with the district attorneys in all matters pertaining to their official duties. He shall keep in proper books copies of all his opinions, and a record of all his official proceedings, and shall deliver the same to his successor."

3, 4. It is said in *State* v. *Guglielmo,* 46 Or. 250, 257 (79 Pac. 577, 580, 7 Ann. Cas. 976, 69 L. R. A. 466), Mr. Justice MOORE speaking for the court, that "the discretionary power vested in and exercised by the attorney general at common law devolves, in this country, in the absence of any statutory regulations, on the district attorneys." The powers of the attorney general at common law are preserved to this day. in some form or other, and in this state are vested by statute and the Constitution either in that officer or in the district attorneys: *State* v. *Guglielmo,* 46 Or. 250 (79 Pac. 577, 7 Ann. Cas. 976, 69 L. R. A. 466); *State* v. *Millis,* 61 Or. 245 (119 Pac. 763); *State ex rel.* v. *Duniway,* 63 Or. 555 (128 Pac. 853). So far as they

concern litigation for the state, or in which the state is interested, the duties for which the claimant was appointed were germane to and might well be performed by either the attorney general or the district attorneys; and, the state having provided such officers charged with such duties, the corporation commissioner could not substitute an appointee of his own to perform those duties. As said by the Court of Appeals of New York, deciding *In re Robinson,* 103 N. E. 160: "The duty of an attorney for a person or corporation may require him, personally or otherwise, to interview all of the witnesses to a transaction or occurrence, whether such witnesses are favorable to the claimant or not, for the purpose of ascertaining so far as possible the extent of the liability of his client, if any, by reason of such transaction or occurrence." The work laid out for the appointee under whom the plaintiff claims, and which it is said the former accomplished, appertains to the duty of an attorney in its essential scope and meaning, for no attorney can efficiently serve his client without ascertaining the facts and the means of proving them. This he may do, of course, either in person or by any other lawful means; but in the end he must acquire personal familiarity with such data, or he falls short of performing his duty toward his client. So far as the appointment involved counsel and legal advice to the commissioner, it may be said that, if that officer was not well enough versed in the law governing his position to perform its requirements, he cannot expect the state to incur the expense of educating him thereto further than may be implied from the functions of its regular law officers. If he desires independent legal advice, he may, at his own cost, secure it. He cannot supersede the regular law officers of the state. The terms "clerks, stenographers, and assistants" are not comprehensive enough to include attorneys, or to work a repeal or

amendment by implication of the laws providing legal advisers for the state and in its interest.

5, 6. It is also contended that by accepting the appointment mentioned, and qualifying therefor, as stated in the writ, the appointee was attempting to hold two lucrative offices at the same time within the inhibition of the Constitution: Article II, Sec. 10. It is contended that the appointment did not constitute an office within the meaning of *David* v. *Portland Water Committee,* 14 Or. 98 (12 Pac. 174), and *State* v. *George,* 22 Or. 142 (29 Pac. 356, 29 Am. St. Rep. 586, 16 L. R. A. 737). In the first of those cases the legislature appointed a water committee to establish and take charge of a water system for the City of Portland. In the latter a commission was appointed to superintend the construction of bridges across the Willamette River at Portland. The court held in the first of the cases, and the rule is followed in the second, that the appointees were mere agents of the municipalities involved, and were not officers within the meaning of the Constitution. It is competent, however, for the legislature to prescribe a new meaning of the term ''office,'' or to apply it to a position not hitherto within its scope: *Ex parte Case,* 69 Or. 000 (135 Pac. 881).

It is said in Section 6 of the act providing for a corporation commissioner that ''he shall appoint such clerks, stenographers, and assistants as may be actually necessary from time to time to properly discharge the duties of his office.'' Section 7 says that, ''before entering upon the duties of the offices to which they have been appointed, the corporation commissioner and the other employees of the department shall subscribe to an oath that they will faithfully and impartially discharge the duties of. their respective offices.''

The legislative assembly, in which the claimant was a senator at the time, designated the situation which he afterward filled as an office, and, inasmuch as the same act provides for the compensation of such officer, it becomes a lucrative office within the meaning of the Constitution, and brings him within the rule that he cannot hold two lucrative offices at the same time.

7. By a parity of reasoning the senator is within the terms of Article IV, Section 30, which says that "no senator or representative shall, during the time for which he may have been elected, * * be appointed to any civil office of profit which shall have been created, or the emoluments of which shall have been increased during said term. * * " The fact that the legislative assembly itself has designated these positions as offices requiring an official oath, and has provided that they shall be filled by appointment rather than by employment, distinguishes the case in hand from the cases of *David* v. *Portland Water Committee,* 14 Or. 98 (12 Pac. 174), and *State* v. *George,* 22 Or. 142 (29 Pac. 356, 29 Am. St. Rep. 586, 16 L. R. A. 737). The legislature itself having designated the positions as offices, we cannot gainsay its definition, nor be wiser than the law in question.

8. There is a further reason for not upholding the claimant in the situation involved. It is said in Article III, Section 1, of the state Constitution that the powers of the government shall be divided into three separate departments, the legislative, executive, including the administrative, and the judicial; and no person charged with official duties in one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided. In any view of the case the functions of the corporation commissioner and his assistants, including stenographers and clerks, pertain to the administrative department of the government in which a mem-

ber of the legislative department is forbidden to participate.

9. The audit of the Secretary of State and the drawing of his warrant in pursuance thereof do not bind the defendant State Treasurer. It was held, in the case of *State* v. *Brown,* 10 Or. 215, that "the presentation of a claim against the state and its allowance by the Secretary do not constitute an account stated so as to preclude an inquiry as to its correctness, in an action at law, brought by the state for a sum of money alleged to have been unlawfully allowed in said account, and paid through mistake." It is also laid down in *Shattuck* v. *Kincaid,* 31 Or. 379 (49 Pac. 758), that, "since a warrant is not conclusive evidence of an indebtedness, it is the duty of the State Treasurer to refuse payment, unless it represents a claim authorized by law."

For the reasons stated, the claimant was not authorized to accept the appointment, or perform the duties mentioned in the writ. He could not, therefore, properly or lawfully claim the compensation annexed to that appointment. The warrant of the Secretary of State issued in payment thereof is not binding upon the State Treasurer, who, under the conditions appearing in the record, was justified in refusing to pay the same.

The conclusion is that the writ should be dismissed, and it is so ordered.      WRIT DISMISSED.