Argued November 26, 1958, affirmed February 25, brief on
rehearing March 20, rehearing denied March 25, 1959

STATE ex rel THORNTON *v.* WILLIAMS et al

336 P. 2d 68

*Lloyd G. Hammel*, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Peter S. Herman, Assistant Attorney General, Salem, and Robert Y. Thornton, Attorney General, Salem.

*George A. Rhoten*, Salem, and *Robert F. Maguire*, Portland, argued the cause for respondents. On the brief were Rhoten, Rhoten & Speerstra, Salem.

Before PERRY*, Chief Justice, and LUSK, WARNER and SLOAN, Justices.

WARNER, J.

---

\* Chief Justice when case was argued.

In the name of the state of Oregon, Robert Y. Thornton, the relator, as its Attorney General, brought this proceeding for a writ of mandamus in the circuit court for Marion county. By it he seeks to compel the defendant Liquor Commission① of this state to allow him to inspect certain records alleged to have been acquired as the result of an investigation conducted by Robert F. Maguire and Howard I. Bobbitt, attorneys at law, at the instance, and for the information, of the Commission, concerning alleged charges of violation of the criminal and liquor laws by its officers and employees.

Defendants' demurrer to the amended alternative writ challenged the writ on six separate grounds. One of these was the writ's insufficiency of facts to constitute cause for relief against the defendants. The demurrer was sustained and an order entered dismissing the proceeding. From this order, the attorney general appeals. We find that we only need consider the ground of insufficiency of facts to test the merits of the demurrer.

The allegations of the alternative writ reveal the apparent objectives of the attorney general in initiating the proceeding. It is there alleged that he is making investigations pursuant to ORS 180.090 of violations of the criminal and liquor laws of the state of Oregon by officers and employees of the Oregon Liquor Control Commission (Writ, paras. IV and V); that he is informed that the commission has on its own motion earlier commenced an extended inquiry into similar charges of violations and had employed

---

① At the time this proceeding was filed, Messrs. Lester Ireland and J. H. Sroufe were members of the commission. During its pendency, Messrs. Williams and Lage were appointed to the places made vacant by their resignation. The successors were later made parties by order in this court.

Messrs. Maguire and Bobbitt as its agents to investigate them and take testimony pursuant to the provisions of ORS 471.760 of the Liquor Law Code (Writ, para. VI); that these agents acquired "evidence indicating violations of the criminal and liquor laws of the State of Oregon, and that disclosure of said information is vital to the interests of the people and enforcement of the criminal and liquor laws of the State of Oregon." (Writ, para. IX) The writ further alleges that the relator has requested the commission for permission to inspect such records of its agent-investigators, but that the commission has declined to honor his request, hence this proceeding to compel the commission to do so. (Writ, para. XII)

Thus, the writ makes it clearly manifest that the attorney general has already entered the area of criminal investigation which he desires to extend and ostensibly with a view to criminal prosecutions, if the investigations so warrant.

Therefore, the ultimate question to be resolved is the extent of the power of the attorney general to initiate investigations of alleged violation of the criminal statutes and thereafter prosecute the violators if his investigation seems to warrant.

It is the attorney general's position that this power accrues to him by reason of the common law and certain statutes. In the writ, in his briefs and in oral argument, he relies for statutory authority primarily upon ORS 180.090.

The defendants represent that the attorney general has none of the common-law investigatory and prosecuting authority in criminal matters enjoyed by English attorneys general. And when acting in the criminal area he does so solely at the direction of the governor given pursuant to ORS 180.070 when ex-

pressly directed to enter that field. Without such authority, they argue, he trespasses upon a domain which the constitution reserves to the district attorneys of the several counties.

In the interest of proper orientation, before proceeding further, we turn, first, to the constitutional background underlying the problem, then to a consideration of the historical evolution through legislative grants of the power and duty to the attorney general with respect to criminal matters. In so doing, we will necessarily learn to what extent he is endowed by the common law.

The office of attorney general was not created by the constitution. It is a product of statute and did not come into existence in this state until 1891.

The district attorneys of the different counties are the only law officers of the state recognized by the constitution (Art VII, § 17)[2]. That instrument casts upon the governor the duty to "take care that the Laws be faithfully executed." (Art V, § 10)[3]. The pattern of law enforcement as found in the constitution is clear. It embraces supervision and direction on the part of the governor and execution on the part of the district attorneys. It will be found in the discussion which follows that this pattern has been at all times carefully and consistently maintained by the legislature ever since the creation of the attorney general's office in 1891 down to the present date.

Our legislature has gone far to implement the governor's constitutional obligation. It has vested him

[2] Art VII, § 17, Oregon Constitution: "There shall be elected by districts comprised of one, or more counties, a sufficient number of prosecuting Attorneys, who shall be the law officers of the State, and of the counties within their respective districts, and shall perform such duties pertaining to the administration of Law, and general police as the Legislative Assembly may direct."

[3] Art V, § 10, Oregon Constitution: "He shall take care that the Laws be faithfully executed."

with power to employ special agents to investigate "cases in which he believes the laws of the state are being violated, * * * whenever in his judgment it is necessary * * *." ORS 148.010 (See Oregon Laws 1905, ch 49, p 110).

The executive's position in this respect was later strengthened by giving him authority to quicken action in such matters by Oregon Laws 1913, ch 180, p 321 (now ORS 148.110).

The powers conferred upon the governor by ORS 148.110 are further implemented by ORS 148.120 and 148.150, providing for appointment of special officers to assist investigations necessary to correct failures to execute and enforce criminal laws.

The Act of 1913, from whence ORS 148.110 is derived, is one of special interest here in its historical aspect. In § 2 of the act (now ORS 148.120), we find the first reference to an authority for activity or appearance by the attorney general in criminal matters "on behalf of the Governor, *if by him requested so to do.*" (Emphasis ours.) And then only in such special investigatory proceedings in the circuit court as the governor is authorized to initiate under ORS 148.120. It is the seed of the idea which also finds later and broader expression in ORS 180.070.

We now give consideration to the relator's claim of authority, first, as to the common law, and then as to the statutes.

In the early case of *State v. Douglas County Road Company* (1882), 10 Or 198, in construing § 17 of Art VII, supra, of the Constitution, the court says, at p 201:

"The district attorney is the law officer of the state, within the limits of his district, with the

powers, in the absence of statutory regulation, of the attorney general at comomn law.  * * *"

The same thought finds expression in *State v. Guglielmo*, 46 Or 250, 79 P 577, 80 P 103, a case which was decided in 1905, and after the office of attorney general had been created. There, Mr. Justice Moore, speaking for the court, declared at p 257:

"* * * The discretionary power vested in and exercised by the attorney general at common law devolves, in this country, in the absence of any statutory regulations, on the district attorneys [citing cases], who are entitled to prosecute persons for the commission of crimes by information, as a right pertaining to their office, and without leave of court: * * *."

Approval for this construction will also be found in the following cases: *State ex rel. v. Lord*, 28 Or 498, 528, 43 P 471, 31 LRA 473; *State ex rel. v. Metschan*, 32 Or 372, 384, 46 P 791, 53 P 1071, 41 LRA 692; *State ex rel. v. Duniway*, 63 Or 555, 561, 128 P 853; *Gibson v. Kay*, 68 Or 589, 594, 137 P 864; *Watts v. Gerking*, 111 Or 641, 665, 222 P 318, 228 P 135, 34 ALR 1489. A more recent confirmation is disclosed by *State ex. rel. v. Farrell*, 175 Or 87, 93, 151 P2d 636 (1944), and where the court observed that the construction as originally stated in *State ex rel. v. Douglas County Road Company*, supra, "has never, to our knowledge, been departed from." It is also our observation as of this time.

We also note Mr. Justice Rand's statement in *Wemme v. First Church of Christ, Scientist*, 110 Or 179, 216, 219 P 618, 223 P 250 (1924), holding: "The office of Attorney General in this state is created by statute, and the powers and authority of the incumbent of that office are those conferred upon him by the statute, and no others."

■ Thus, we see that the common-law powers vested in the attorneys general of England to engage in the investigation and prosecution of criminal violations repose in the district attorneys of Oregon "in the absence of statutory regulation" (*State v. Douglas County Road Company*, supra) and not in the attorney general of this state.

■ To what extent then has the legislature transferred the common-law powers of district attorneys in that area to the attorney general? In making this approach, we cannot invoke the policy of the common law to change the meaning of a clear and unambiguous statement found in a statute. 82 CJS 798, Statutes § 363. The answer to this question will be best ascertained by following in chronological order the legislative acts pertaining thereto.

The powers originally conferred on the attorney general are found in the act creating his office (Oregon Laws 1891, § 4, p 188). There they were limited to advice and counsel, the preparation of certain instruments usual to the state's business and the duty to prosecute or defend in the Supreme Court causes in which the state was interested. The powers and duties thereby conferred were solely in relation to the civil business of the state. In using the term "civil" here and later, we use it in contradistinction to matters of a criminal nature. No reference is made to criminal powers or criminal activity of any kind. Under the Act of 1891, the attorney general was essentially the equivalent of a general counsel and legal advisor to the state and thus in a position not unlike that of a general counsel to a large private corporation. This limited power and narrowed field of duty continued until 1901.

In that year § 4 of the Act of 1891 was amended

(Oregon Laws 1901, § 2, p 130). This amplified his powers in civil matters to a small degree but added no criminal responsibilities. His powers and duties otherwise remained as provided by the Act of 1891. This section found its way into the code as § 2670, Lord's Oregon Laws.

The powers of the attorney general as defined by the Act of 1901 remained intact until 1915. That year what was § 4 of the Act of 1901 (later § 2670, LOL) was repealed. In lieu thereof was substituted § 1 of ch 196, Oregon Laws 1915. This retained in substantially the same form and to the same extent the powers of the attorney general granted by the Act of 1891, but with this addition: "He shall be the law officer of the State, and shall have all of the power and authority usually appertaining to that office * * *." Except for the significant clause terminating this section, it might be agreed that § 1 conferred all of the common-law powers and duties enjoyed by the attorneys general of England. However, the closing clause of § 1 of the Act of 1915 reads, as far as pertinent:

"* * * nor shall this Act be construed to deprive the District Attorneys of any of their authority, nor relieve them from any of their duties to prosecute criminal violations of law and advise the officers of the counties composing their districts, * * *."

In § 2 of the Act of 1915, we find again for the second time a statutory provision authorizing the attorney general to interest himself in criminal matters but then only upon the express condition, i.e., "When directed by the Governor." Section 2 reads:

"*When directed by the Governor,* the Attorney General shall attend in person, or by one of his assistants, any term of any Court, or appear before

the Grand Jury in any county, for the purpose of managing and conducting in such Court, or before such Jury, such criminal actions or proceedings as shall be specified in such requirement; in which case the Attorney General, or his assistant so attending, shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the District Attorney would otherwise be authorized to exercise, or perform, and in any of such actions or proceedings, the District Attorney shall only exercise such powers and perform such duties as are required of him by the Attorney General, or his assistant so attending." (Emphasis ours.)

Thus, in the Act of 1915, we have a further statutory recognition and implementation of the constitutional pattern of responsibility for law enforcement in this state; that is, with supervisory or directive authority resposing in the governor and the powers and duties respecting the execution of the criminal laws exclusively left with the district attorneys *except* when the governor directs the attorney general to assume those functions. This, we will find, is consistently followed in all subsequent legislation relating to relator's office.

The legislature of 1921 made some minor amendments to the previous acts (See Oregon Laws 1921, ch. 251, p 476), but they do not touch upon matters in which we are presently interested.

The next act, in the order of legislative attention, was in 1935 (Oregon Laws 1935 [SS], ch 68, § 1). That section, as far as pertinent here, provides:

"In making investigations of and conducting *special prosecutions for violations or alleged violations of the criminal laws of the state,* the attorney general may call upon the department of state police, or any other peace officer or department, for

assistance in making such investigations or, in his discretion, may employ special investigators for such purpose. \* \* \*" (Emphasis ours.)

This is now ORS 180.090 and is, as we earlier said, the section upon which the attorney general places his greatest reliance in this matter. We will defer comment on it until later.

The legislature gave the attorney general no further consideration until 1947 when the bill creating the Department of Justice was enacted (Oregon Laws 1947, ch 556, p 1026).

A critical examination of the Act of 1947 reveals that it is substantially the same as that of 1915, except to extend the attorney general's services to all departments of government which require the civil services of an attorney or counsel in order to protect the interest of the state, and by making his office the exclusive attorney or counsel for those departments. It further unified his control over all assistants he appoints to serve such departments.

■ Section 7 of this last act, as did § 2 of the Act of 1915, authorizes him *"when directed to do so by the governor"* to take full charge of any investigation or prosecution of violations of law. (Emphasis ours.) But § 7 also carries in the exact language of the exception found in § 1 of the Act of 1915, the provision that the powers conferred upon the attorney general by the act shall not be construed to deprive the district attorneys of their authority, or relieve them of their duties to prosecute criminal violations of the law. Thus, the district attorneys are displaced in the exercise of such authority only when the attorney general acts under the direction of the governor and then only to the extent that the governor authorizes him to act.

By the Code Revision Bill of 1953, from whence we

get Oregon Revised Statutes, those sections of the Act. of 1947 which presently challenge our interest and upon which the attorney general relies as the basis of his authority to pursue the alleged matters recited in the alternative writ are §§ 2, 3, 4 and 7. They now appear, respectively, in the 1953 revised code as ORS 180.220, 180.240, 180.060 and 180.070④. We have before noticed that § 2 of ch 196, Oregon Laws 1915 appears in the current code as ORS 180.080⑤ and § 1 of ch 68, Oregon Laws 1935 (SS), is found in ORS 180.090⑥. All of the foregoing sections are now placed in one chapter of the code (ch 180) and as so grouped might well be denominated "The Attorney General and Department of Justice Code" by reason of their obvious correlation.

---

④ ORS 180.070: "(1) The Attorney General may, when directed to do so by the Governor, take full charge of any investigation or prosecution of violation of law in which the circuit court has jurisdiction.

"(2) When acting under this section, the Attorney General shall have all the powers of a district attorney, including the power to issue or cause to be issued subpenas or other process. The Attorney General may, when he considers the public interest requires, with or without the concurrence of the district attorney, direct the county grand jury to convene for the investigation and consideration of such matters of a criminal nature as he desires to submit to it. He make take full charge of the presentation of such matters to the grand jury, issue subpenas, prepare indictments, and do all other things incident thereto to the same extent as the district attorney may do.

"(3) All costs, fees and other expense shall be paid by the county in which the investigation takes place, to the same extent as if conducted by the district attorney of that county.

"(4) The power conferred by this section, ORS 180.060, 180.220 or 180.240 does not deprive the district attorneys of any of their authority, or relieve them from any of their duties to prosecute criminal violations of law and advise the officers of the counties composing their districts."

⑤ ORS 180.080: "When directed by the Governor, the Attorney General shall attend in person, or by one of his assistants, any term of any court, or appear before the grand jury in any county, for the purpose of managing and conducting in such court, or before such jury, the criminal action or proceeding specified in the requirement. The Attorney General, or his assistant so attending, shall exercise all the powers and perform all the duties in respect of the action or proceeding which the district attorney would otherwise be authorized to exercise or perform. The district attorney shall only exercise such powers and perform such duties in the action or proceeding as are required of him by the Attorney General, or his assistant so attending."

⑥ ORS 180.090: "In making investigations of and conducting special prosecutions for violations or alleged violations of the criminal laws of the state, the Attorney General may call upon the Department of State Police or any other peace officer or department for assistance in making such investigations or, in his discretion, may employ special investigators for such purpose."

■ Because of the realtor's recourse to ORS 180.090, supra, as sustaining his authority to make the investigations indicated in the alternative writ, this section of the code merits special comment. The powers there conferred on the attorney general are made applicable only in "special prosecutions." ORS 180.090 and 148.110, supra, were, in 1935, the only legislative declarations extant authorizing the attorney general to engage in any criminal prosecutions, and then only upon express direction of the governor. This limitation gives to each criminal investigation so authorized the character of a "special prosecution." This conclusion is fortified by the fact that the duty to further "regular prosecutions" is reposed by the constitution and statutes upon the district attorneys. The powers with which the attorney general is invested under ORS 180.090, therefore, remain quiescent to and until vitalized by a direction from the governor to act. This section must, therefore, be construed pari materia with ORS 180.060 and 148.110 as we have done. *Ahern v. Settergren*, 180 Or 287, 291, 176 P2d 645.

Again, we point out that at no time since the office of attorney general came into being in 1891 has that officer been empowered to initiate on his own motion any criminal investigations or prosecutions except when so directed by the governor, a statutory privilege in that restricted sense which did not come into being until 1913, 22 years after the creation of the office (See Oregon Laws 1913, ch. 180, § 1, supra, now ORS 148.110). The limited character of this authority was repeated in the Acts of 1915 and 1947, supra, and where the legislature each time emphasized its limitations by a special provision protecting the powers and duties of district attorneys against an invasion by the attorney general. See ORS 180.070(4), supra. By so

doing, the legislature has in each enactment brought the special duties of the attorney general in harmony with the provisions of Art V, § 10 and Art VII, § 17 of the constitution.

■ We hold that the attorney general has no power or duty to initiate an investigation of alleged violations of our criminal statutes nor to undertake any criminal prosecutions unless he is fortified with a gubernatorial mandate to so act; without it, no right to relief sought by the writ arises.

In the instant matter, the writ is silent as to the existence of such authority and in the absence of an allegation to that effect it is vulnerable to defendants' demurrer.

Our conclusions do not thwart a vigorous enforcement of the law nor do they delay prosecution of its violators when prosecution is in order; to the contrary, this clarification of authority should expedite those proceedings and avoid possible strife and dissention which might otherwise ensue in the administration of our criminal laws if our attorneys general would independently and without knowledge of the governor or the district attorneys of the state arrogate to themselves the powers which the present writ indicates that the attorney general believes inhere to his office.

The judgment of the circuit court is affirmed.