Argued February 17, affirmed May 6, 1971

# THE PEOPLE OF THE STATE OF OREGON, ACTING BY AND THROUGH LEE JOHNSON, ATTORNEY GENERAL, *Appellant, v.* DEBT REDUCERS, INC. ET AL, *Respondents.*

484 P2d 869

*J. Bradford Shiley*, Special Assistant to the Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and Alan H. Johansen, Assistant Attorney General, Salem.

*R. Alan Wight*, Portland, argued the cause for respondents. With him on the brief were Norman J. Wiener, and King, Miller, Anderson, Nash & Yerke, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

This is a suit brought in the name of the People of the State of Oregon through the Attorney General "on behalf of John E. Black, Real Estate Commissioner," pursuant to alleged authority in ORS 180.060 (1)(d) and (6), and ORS ch 697. The Real Estate Commissioner verified the complaint, but is not named a party in the title of the case. In this regard it should be noted that ORS 16.070 requires that verification shall be made by parties. The complaint also

alleges that the Attorney General, pursuant to ORS 180.060 (6) brings the suit as *parens patriae* to protect the public interest. The Attorney General appeals from the trial court's adverse ruling on his authority to bring the suit. The complaint alleges, in substance, that defendant Debt Reducers, Inc., and the individual defendants, operated a business which adjusted and paid off debts of individuals. The numerous individuals who were clients of the service would pay their income to defendant, and for a fee defendant would apportion the income to debtors and the individual. The Attorney General alleged fraud, various violations of law practiced by defendant in such business to the damage of the clients, and sought injunctive relief, accounting and reimbursement, and appointment of a receiver for defendant. After an *ex parte* preliminary injunction had been ordered and a receiver appointed, the Attorney General and defendants' attorney arrived at a stipulation under which certain restraints would be continued, the receivership terminated, and the issue of the Attorney General's authority to bring this as a class suit, *parens patriae*, segregated for initial determination. The circuit court approved the stipulation, made an order effecting it, and proceeded to determine the segregated issue.

The Attorney General claims his authority to represent the public interest and particularly the allegedly overcharged clients stems from the doctrine of *parens patriae*. The stipulation that segregates this issue apparently does not contemplate that the court shall take note of the allegations by which the Attorney General also claims in the same cause of suit that he acts on behalf of the Real Estate Commissioner of Oregon pursuant to ORS ch 697. After hearing arguments and being briefed, the circuit court held that the

Attorney General did not have the claimed authority, observing:

> "* * * [T]he plaintiff does not have the right to proceed in this case on the parens patriae theory in behalf of the plaintiffs named. As counsel pointed out, there is no case law in this state, or any other, that I have read, that would clearly permit the Attorney General of the state to act in the capacity he is seeking to act in this case. I completely agree that under the English historical basis the doctrine was used only for incompetents and the insane, and I don't think it has been stretched in this country or this state to cover this kind of situation where one private citizen has an alleged claim against another private citizen of the state. This does not seem to me to be a proper case for the doctrine of parens patriae to be employed * * *."

The court said its holding was "particularly true in view of the fact" that other litigation involving the same charges against defendants was pending in circuit court—a class suit by individual plaintiffs in the Fourth Judicial District of Oregon.[①]

---

[①] See Kirkpatrick, *Consumer Class Litigation,* 50. Or L Rev 21, 28 (1970):

"The negative attitude of courts toward class actions for damages is unfortunate. Quite often district attorneys and regulatory officials have authority only to enjoin future illegal conduct and not to recover damages on behalf of persons injured by such conduct in the past.[⑳] * * *

"[⑳] *See, e.g.,* Johnson v. Debt Reducers, Inc., Civil No. 66-531, Marion County Cir. Ct. (1970) [this case]. The Oregon Attorney General was denied the right to sue on the *parens patriae* theory on behalf of several thousand persons to recover allegedly illegal overchages [sic] taken by a debt-consolidating agency. Oregon legislation regulating debt collection agencies contained no provision whereby a state regulatory authority could recover illegal overcharges. OR. REV. STAT. §§ 697.010-697.992 (1969). *But see* Kelly v. Debt Reducers, Inc., Civil no. 355-241, Multnomah County Cir. Ct. (1970) (consumer class action to recover the allegedly illegal overcharges)."

The trial court and the parties have treated the stipulation to segregate the issue of the Attorney General's authority as though it were a demurrer on the grounds set out in ORS 16.260 (2) or (4); namely, lack of capacity to bring the suit, or defect of party plaintiff. This is its effect and we will so treat it.[8]

Pointed mention of a similar pending proceeding in the Fourth Judicial District was made at oral argument in this court. Inasmuch as the pleadings and stipulation do not present to us an issue which amounts to a demurrer on the ground of ORS 16.260 (3)—another such suit pending—we will not consider that question in this decision.[9]

ORS 180.060 (1) (d) and (6) provide:

"(1) The Attorney General shall:
"* * * * *

"(d) Appear, commence, prosecute or defend any action, suit, matter, cause or proceeding in any court when requested by any state officer, board or commission when, in his discretion, the same may be necessary or advisable to protect the interests of the state.
"* * * * *

"(6) The Attorney General shall have all the power and authority usually appertaining to such office and shall perform the duties otherwise required of him by law."

---

[8] ORS 1.160 reads in part:

"* * * [I]f the course of the proceeding is not specifically pointed out by the procedural statutes, any suitable process or mode of procedure may be adopted which may appear most conformable to the spirit of the procedural statutes."

[9] In any event, "* * * the ultimate effect of the class action judgment will be determined when it is introduced in a subsequent action to bind persons not parties to the action." Note, "Binding Effect of Class Actions," 67 Harv L Rev 1059, 1060 (1954).

The stipulation seeks to limit the claim of authority by the Attorney General which we may consider to the doctrine of *parens patriae*. This doctrine as applied here simply means that the Attorney General, in his traditional capacity under the common law, claims the authority which was first thought to be that of the sovereign acting in a large sense as the father of all the people in the sovereignty. As the trial court indicated in the part of its opinion which we have quoted above, the doctrine of *parens patriae* is usually applied for the benefit of people who are *non sui juris*. However, it is not invariably so limited in its application.[4]

The United States Supreme Court pointed out in *Georgia v. Pennsylvania R. Co.*, 324 US 439, 65 S Ct 716, 89 L Ed 1051 (1945), which was a suit brought by Georgia as *parens patriae* for a class of its citizens under the Clayton-Anti-Trust Act to restrain certain railroads from discriminating against persons of Georgia in setting freight rates:

> "* * * The rights which Georgia asserts, *parens patriae*, are those arising from an alleged conspiracy of private persons whose price-fixing scheme, it is said, has injured the economy of Georgia. * * * Suits by a State, *parens patriae*, have long been recognized. * * *
>
> "* * * * *
>
> "It seems to us clear that * * * Georgia may maintain this suit as *parens patriae*, acting on behalf of her citizens * * *." 324 US 439, 447, 450.

---

[4] Under "PARENS PATRIAE" in 31 Words and Phrases 99-101 (1957) (Cum Supp 1969), 13 cases are digested in which the term is applied in the narrow sense applying to persons *non sui juris*, and four cases digested discuss application of the term in the broader sense of the public interest.

If the Attorney General otherwise has authority to bring this kind of proceeding, the doctrine seems broad enough to encompass it. The holding in *State of Hawaii v. Standard Oil of California*, 431 F2d 1282 (9th Cir 1970), urged by defendant, does not appear to be inconsistent with such a conclusion. The Ninth Circuit Court of Appeals noted that an injury to the general economy of the state, which is what was alleged in that case, is not an injury to the business or property of the state or its people. It distinguished *Georgia v. Pennsylvania R. Co.*, supra, and said that the general economy of a region "cannot be regarded as property in possession of the residents individually or publicly." The remoteness of the alleged damage was a principal factor contributing to the court's dismissal of the case. The case at bar is much more restricted than one in which the Attorney General seeks redress for an injury to the general economy. Although it is alleged that the theory of *parens patriae* is involved "in the public interest" in the case at bar, it is obvious that it is so because direct damage to a large number of individuals becomes a matter of public interest.

We conclude that the state derives from the common law the power, in general, to bring a suit such as this, *parens patriae*. The question remains whether the Attorney General has authority to bring the suit in the manner attempted.

*State ex rel Thornton v. Williams*, 215 Or 639, 336 P2d 68 (1959), in conformance with previous Oregon Supreme Court decisions, held that in the field of criminal law the Attorney General of Oregon has no authority except that specifically set forth in the statutes. Other criminal law authority is vested in the district attorneys. See cases cited in *Williams*, 215 Or

at 645. In *Williams*, before proceeding to the conclusion that the Attorney General of Oregon has no general non-statutory authority to conduct criminal matters, the court noted that in 1915 there was added to the Attorney General's authority, by General Laws of Oregon 1915, ch 196, § 1, p 256:

> "* * * 'He shall be the law officer of the State, and shall have all of the power and authority usually appertaining to that office * * *.' [And said] [e]xcept for the significant clause terminating this section [the clause which limits the Attorney General's powers in criminal matters], it might be agreed that § 1 conferred all of the common-law powers and duties enjoyed by the attorneys general of England * * *." 215 Or at 647.

In this context, it is obvious that the court was referring only to the Attorney General's authority in criminal matters.

The briefs which we have studied are cognizant of the above language in *Williams* but they overlook specific language used in *Gibson v. Kay,* 68 Or 589, 594, 137 P 864 (1914), cited in *Williams.* There, in a civil matter in which the Supreme Court was considering the authority of the Oregon Attorney General, it said:

> "* * * '[T]he discretionary power vested in and exercised by the attorney general at common law devolves, in this country, in the absence of any statutory regulations, on the district attorneys.' *The powers of the attorney general at common law are preserved to this day in some form or other, and in this state are vested by statute and the Constitution either in that officer or in the district attorneys*: *State v. Guglielmo,* 46 Or. 250 (79 Pac. 577, 7 Ann. Cas. 976, 69 L. R. A. 466); *State v. Millis,* 61 Or. 245 (119 Pac. 763); *State ex rel. v.*

*Duniway,* 63 Or. 555 (128 Pac. 853) * * *." (Emphasis supplied.)

Thus in 1914, the Oregon Supreme Court indicated that in civil matters the Oregon Attorney General has common-law authority unless restricted by statute, and in 1915 the legislature, as to civil matters, said he "shall have all of the power and authority usually appertaining to that office."

At common law the nature of the office of the Attorney General carries with it the power to act to protect the public interest in a variety of situations, not all of which need be foreseen by the legislative branch of government.[5]

■ In Shepperd, *Common Law Powers and Duties of the Attorney General,* 7 Baylor L Rev 1 (1955), the author, on the basis of *Gibson v. Kay,* supra, stated that Oregon gives its Attorney General common-law

---

[5] The particular provisions of constitutions and statutes bear upon the holdings of the various state supreme courts which have passed upon this question. The state attorney general has been held to have broad common law powers in the following cases: Cleaver v. Roberts, 203 A2d 63 (Del 1964); Hunt v. Chicago Horse and Dummy Ry. Co., 121 Ill 638, 13 NE 176 (1887); State, ex rel., v. City of Kansas City, 186 Kan 190, 350 P2d 37 (1960); Commonwealth v. Gardner, 327 SW2d 947 (Ky 1959); State v. Fisheries Co., 120 Me 121, 113 A 22 (1921); Slezak v. Ousdigian, 260 Minn 303, 110 NW2d 1 (1961); State v. Warren, 254 Miss 293, 180 So2d 293 (1965); State v. Swift, 101 NH 340, 143 A2d 114 (1958); Alexander v. N. J. Power & Light Co., 21 NJ 373, 122 A2d 339 (1956); Suitor v. Nugent, 98 RI 56, 199 A2d 722 (1964); The State v. Loan and Trust Co., 81 Tex 530, 17 SW 60 (1891); Queen Insurance Co. v. The State, 22 SW 1048 (Tex Civ App, *rev'd on other grounds* 86 Tex 250, 24 SW 397, 1893); State v. Gattavara, 182 Wash 325, 47 P2d 18 (1935).

*But see* Arizona State Land Department v. McFate, 87 Ariz 139, 348 P2d 912 (1960); Padgett v. Williams, 82 Idaho 28, 348 P2d 944 (1960); State, ex. rel. v. Home Brewing Co., 182 Ind 75, 105 NE 909 (1914); State ex rel Reynolds v. Smith, 19 Wis2d 577, 120 NW2d 664 (1963); Magness v. Pledger, 334 P2d 792 (Okla 1959).

authority in civil matters. A fair reading of *Gibson* and the 1915 amendment continued to the present time in ORS 180.060 (6), except for the limitation in criminal matters, noted in the line of authority culminating in the *Williams* decision, leads us to the conclusion that in civil matters the Attorney General of Oregon has the common-law powers of that office, except where they are limited by statute or conferred upon some other official.

A statement of those common-law powers of the Attorney General is found in *State v. Warren*, 254 Miss 293, 307, 180 So2d 293, 299 (1965):

> "At common law the duties of the attorney general, as chief law officer of a realm, were numerous and varied. He was chief legal advisor of the crown, was entrusted with the management of all legal affairs, and prosecution of all suits, criminal and civil, in which the crown was interested. *He had authority to institute proceedings to abate public nuisances, affecting public safety and convenience, to control and manage all litigation on behalf of the state, and to intervene in all actions which were of concern to the general public * * *.*" (Emphasis supplied.)

This statement, and statements in some of the other cases cited in n 5, paragraph 1, avoid saying that the Attorney General's common-law powers or duties include class suits to recover damages for an aggrieved class. The class may be so large that an Attorney General-instigated injunction against the nuisance created, or his intervention in an existing suit, may be justified because the size of the group injured makes the situation a matter of general interest. We do not think the case at bar presents such a question to us, for reasons we will now discuss, and which necessarily bear upon the result in this case, regard-

less of the limitation sought to be placed upon the court by the parties' stipulation to segregate an issue.

The complaint seeks, *inter alia*, an injunction based on its only cause of suit. It is brought in the name of the People of the State of Oregon through the Attorney General and is verified by the Real Estate Commissioner.® It also seeks a receivership and reimbursement, that is, damages for injured clients of the defendants.

ORS 697.610 through 697.992 provides in detail for the licensing and regulation of debt-consolidating agencies. It designates the Real Estate Commissioner as the licensing and regulating official. ORS 697.765 (1) provides that "The commissioner shall enforce" the regulatory provisions; (2) the commissioner may require an audit of such a business; (3) if he finds an agency "insolvent or conducting business in such an unsafe or injurious manner as to render its further operations hazardous to the public," he has power of attorney to take over and operate the business under certain procedures and conditions and until, *inter alia*, "A receiver has been appointed * * * pursuant to a petition filed by the commissioner or other interested person * * *," and he is empowered to establish and enforce rules and regulations for licensees. ORS 697.730 provides that the commissioner "may, upon his own motion, and shall, upon the sworn complaint * * * of any person," investigate violations of the

---

® This language seems to have been prompted by part of the language of ORS 697.783.

"* * * The [real estate] commissioner may, in the name of the people of the State of Oregon through the Attorney General or the district attorney of any county in the state, apply for an injunction in any court of competent jurisdiction, to enjoin any person, firm, association or corporation from engaging in the business of debt consolidating. * * *"

act. ORS 697.783, as noted in n 6, gives the commissioner authority to seek injunctions where proper in the process of enforcing the act. Nowhere does the act give the commissioner specific authority to seek recovery for individuals damaged by such agencies.

The procedure for all of the other specific objectives of the complaint in this cause of suit is covered in that act, and authority with reference thereto is conferred on the commissioner.

In *Dilger v. School District 24CJ*, 222 Or 108, 352 P2d 564 (1960), the Oregon Supreme Court said:

"* * * [W]here the statute does not specify the agency which is to administer the law it is proper for the court to regard the statute as impliedly allocating the administration of the law to the agency which was created by the legislature to carry out the same type of function with which the statute is concerned * * *." 222 Or at 113.

ORS 697.785 provides that the remedies conferred upon the commissioner by ORS ch 697 "are in addition to and not exclusive of any other remedies provided by law." It is argued that this saving clause preserved to the Attorney General such common-law powers as he had with reference to class suits for damages. We do not so construe the quoted language.

Beal's, Cardinal Rules of Legal Interpretation 305, Statutes (3d ed 1924), warns:

"'The insertion of a saving clause is never a safe ground for determining the construction of an Act * * *.'"

In *Cabell et al v. Cottage Grove et al*, 170 Or 256, 281-82, 130 P2d 1013, 144 ALR 286 (1942), the court said:

"* * * [T]he * * * code is drawn with me-

ticulous care * * * to define the powers * * * with precision * * * the legislature must be presumed to have been aware of provisions elsewhere found * * *. Is it not, therefore, reasonable to suppose that if any further authority * * * was intended * * * the law-makers would have manifested that intention in express language and not have left it to be inferred or implied from general words * * *?"

We think such reasoning applies to the instant case. The saving clause at best preserved authority for injured parties to do such things, for example, as bring class actions under ORS 13.170:

"* * * When the question is one of a common or general interest of many persons, or when the parties are very numerous * * * one or more may sue or defend for the benefit of the whole."

■ From an examination of the entire licensing and regulatory act, we think that if the legislature had intended for any state official to have authority to seek recovery of damages for the class which is represented in this suit, the Real Estate Commissioner would have been that state official. We think this excludes other state officials from performing the function attempted by the Attorney General, *parens patriae*, in the case at bar. Therefore, we hold that the general authority of the Attorney General to act on behalf of the state, *parens patriae*, is not applicable to the instant situation.

Affirmed.