Argued December 3, affirmed December 27, 1971

STATE ex rel JOHNSON, *Appellant, v.*
BAUMAN et al, *Respondents.*

492 P2d 284

- *Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for appellant. On the brief were Lee Johnson, Attorney General, and James W. Durham, Jr., Assistant Attorney General, Salem.

*James H. Clarke,* Portland, argued the cause for respondents Bauman and Howard S. Wright Construction Company. With him on the brief were McColloch, Dezendorf, Spears & Lubersky and George L. Kirklin, Portland.

No appearance for respondents Franklin Service Corporation and Paula Munson Penny.

Before LANGTRY, Presiding Judge, and FOLEY and THORNTON, Judges.

LANGTRY, J.

This appeal by the Attorney General is from an order dismissing his suit for a declaratory judgment against the defendants. The court had sustained the defendants' demurrer to the amended complaint and the Attorney General had refused to plead further.

In the amended complaint plaintiff alleges that the defendants own a number of specifically described lots in Cannon Beach, Oregon, and that they propose to build condominiums upon them. He alleges that for a period in excess of 10 continuous years the general public used the specifically described lots and the ocean shore lying westerly from them adversely to defendants. He alleges that the public's use of the property has been for a number of specific recreational purposes. The declaratory judgment sought is one declaring the existence of the public's recreational easement in the real property described in the complaint, and enjoining defendants from using the property for building condominiums or in any manner which would interfere with the public's alleged easement therein.

The trial court ruled that the Attorney General has no authority in law to bring such a proceeding.

It held that the Attorney General's authority in this instance is closely comparable to that sought but denied in *People of Oregon v. Debt Reducers*, 5 Or App 322, 484 P2d 869 (1971). The trial court concluded that a fair reading of the statutes giving authority to the State Highway Commission to exercise the state's jurisdiction over state lands and rights in land adjacent to the ocean shore indicates that the legislature intended that if any state official, board or commission were to have authority to bring a suit such as this, the State Highway Commission would have been that body. We agree with that conclusion.

In *Debt Reducers* we held:

"\* \* \* [I]n civil matters the Attorney General of Oregon has the common-law powers of that office, except where they are limited by statute or conferred upon some other official."

We quoted from *State v. Warren*, 254 Miss 293, 180 So2d 293, 299, 182 So2d 234 (1965), that at common law the Attorney General

" ' \* \* \* *had authority to institute proceedings to abate public nuisances, affecting public safety and convenience, to control and manage all litigation on behalf of the state, and to intervene in all actions which were of concern to the general public* \* \* \*.' " 5 Or App at 331.

We think that this language could be properly interpreted to authorize the Attorney General to bring a suit such as the one here. The question remains, however, whether the legislature has delegated that authority to some other agency of the state government.

In the amended complaint, two kinds of land are named to which it is alleged that the state has some

rights: (1)(a) the land between low and high tide lines owned in fee simple, and (b) the land between the line of vegetation and line of high tide to which the state has a recreational easement; and (2) easements acquired for recreational purposes through adverse use by the public in privately-owned property above the vegetation line.

Plaintiff's amended complaint requests declaratory judgment affecting all of defendants' property. From the description of that property in the complaint it is apparent that some allegedly lies seaward of the statutory vegetation line (ORS 390.770) and is "ocean shore." ORS 390.605 (2) describes "ocean shore" as the land lying between extreme low tide and the vegetation line. The trial court's decision only addressed the question of the Attorney General's authority to bring suit regarding defendants' land east of the ocean shore. In oral argument the Attorney General stated the easterly land was the only land in question and conceded that the State Highway Commission has exclusive authority as to legal actions on behalf of the state regarding any land in the ocean shore, that is, seaward of the vegetation line. With this clarification, we return to the central issue of whether the legislature intended to delegate authority to bring the instant suit to an agency or official other than the Attorney General.

ORS 366.205 provides in pertinent part:

"* * * * *

"(3) * * * [T]he commission [highway] has complete jurisdiction and authority over * * * recreational grounds or places acquired by the state for recreational purposes except as otherwise provided by law.

"(4) The commission has full power to carry

out provisions of and may make such rules and regulations as it deems necessary for accomplishment of the purposes of this Act.

"*   *   *   *   *"

A similar grant of power is found in ORS 390.635 which provides that the State Highway Commission

"*   *   * has jurisdiction over the state recreation areas designated or acquired under ORS 390.610, 390.615, 390.620 or 390.630 in order to carry out the purposes of ORS 390.610, 390.620 to 390.660 *   *   *"

ORS 390.605 (3) defines "State recreation area" generally as "land *   *   * under the jurisdiction of the State Highway Commission, pursuant to subsection (3) of ORS 366.205 *   *   *." A delineation of the specific recreation areas is contained in various sections of ORS ch 390.

ORS 390.615 declares the part of the ocean shore (defined supra) between extreme low tide and ordinary high tide to be a state recreational area. This area is commonly referred to as the "wet sand."

ORS 390.610 (2) provides that where the public's use "has been legally sufficient to create rights or easements" in the ocean shore, it is in the public interest to protect and preserve such public rights or easements as a part of Oregon's recreational resources. In other words, the public may acquire a recreational easement in the "dry sands," or that area of the ocean shore between ordinary high tide and the vegetation line. *State ex rel Thornton v. Hay,* 254 Or 584, 587, 462 P2d 671 (1969).[1]

---

[1] Thornton v. Hay, 254 Or 584, 462 P2d 671 (1969), which included the Highway Commission as a party plaintiff, contains a more detailed description of the physical characteristics of the

As to the aforementioned recreational areas, the Commission has explicit statutory authority to:

> "* * * undertake appropriate court proceedings to protect, settle and confirm all such public rights and easements in the State of Oregon." ORS 390.620 (1).

The Attorney General concedes this much, but argues that as to land east of the ocean shore, where some of defendants' property lies, the Attorney General has either exclusive or concurrent authority to bring the instant law suit. We believe the statutory scheme of ORS ch 390 reflects a legislative intent contrary to the Attorney General's position.

ORS 390.660 provides:

> "The State Highway Commission is hereby directed to protect, to maintain and to promulgate rules governing use of the public of property that is subject to ORS 390.640, property subject to public rights or easements declared by ORS 390.610 * * *."

Adjacent may mean "relatively near or close together." Webster's Third New International Dictionary (1969). The areas encompassed by this section would appear to include at least some of defendants' land since the complaint describes parcels of land as contiguous to the high tide line, though extending eastward beyond the ocean shore.

Even as to those areas lying solely east of the ocean shore the Commission has certain authority.

---

ocean shore which are important to legal analysis than is found here. *See also* State Highway Commission v. Fultz, 261 Or 289, 491 P2d 1171 (1971).

ORS 390.630 provides:

> "The State Highway Commission, in accordance with ORS 390.110, may acquire ownership of or interests in the ocean shore *or lands abutting, adjacent or contiguous to the ocean shore as may be appropriate for state recreation areas or access to such areas where such lands are held in private ownership* * * *." (Emphasis supplied.)

See also ORS 390.660, quoted supra. As noted above, ORS 366.205 (3) grants "* * * complete jurisdiction and authority over * * * recreational grounds *or places acquired by the state for recreational purposes* * * *," to the Commission. And ORS 366.205 (4) grants the Commission *"full power* to carry out the provisions of * * * this Act * * *." (Emphasis supplied.)

Taking this Act by its four corners, we think that the only fair interpretation which can be placed upon it, with reference to the present controversy, is that the legislature intended that the authority of the state of Oregon with reference to protection of the public's recreation lands and rights in land along the ocean shores be vested exclusively in the State Highway Commission, and that if any state official, board or commission were to have authority to bring a suit such as the Attorney General has attempted here, the State Highway Commission would be that body. ORS 390.660.

Words such as "jurisdiction," "control," "authority," and "administration," when used in acts the nature of which we are interpreting, have no settled legal or technical meaning. Their meaning

> "* * * must be ascertained from the connection in which they are used, the act in which they are found, and the legislation of which they form

a part." *Cabell v. Cottage Grove,* 170 Or 256, 282, 130 P2d 1013, 144 ALR 286 (1942).

It would be an inconsistent fragmentation of authority—a strained construction of the statutes—to say that the legislature gave to the State Highway Commission exclusive authority to protect a pathway used by the public from the low tide line to the vegetation line (which the Attorney General concedes), but left the authority to protect the projection of the same pathway to the upland with the Attorney General.

Affirmed.