JOHN B. KEENAN, SUPERINTENDENT OF ELECTIONS OF ESSEX COUNTY, AND COMMISSIONER OF REGISTRATION OF ESSEX COUNTY, WITHIN THE STATE OF NEW JERSEY, PLAINTIFF, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX, A BODY POLITIC OF THE STATE OF NEW JERSEY; HARRY LERNER, TREASURER OF THE COUNTY OF ESSEX, AND HENRY A. PEER, TREASURER ELECT OF SAID COUNTY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 19, 1968.

*Mr. Herman W. Kapp* for plaintiff.

*Mr. Irwin I. Kimmelman,* Essex County Counsel, for defendants.

The opinion of the court was delivered by

ANTELL, J. C. C. (temporarily assigned). Plaintiff is the Superintendent of Elections and Commissioner of Registration of Essex County. By this action he challenges the right of defendant Board of Chosen Freeholders of Essex County to remove his. legal counsel from the county payroll. He also seeks to have the county treasurer enjoined from complying

with the terms of the resolution by which the action of the board was taken. On these cross-motions for summary judgment no material facts are in dispute.

On December 16, 1965 plaintiff, acting under color of *N. J. S. A.* 19:31–2 and *N. J. S. A.* 19:32–2, appointed Patrick J. Hanifin, Esq., a member of the New Jersey Bar, as counsel to his office. Hanifin was thereupon placed on the county payroll by defendant board and served in that position until January 25, 1968. During the intervening time Hanifin provided plaintiff with legal opinions, counseled as to election recounts, represented plaintiff in court hearings, supervised the employment of additional attorneys on election days for court hearings, took necessary legal action where election violations were alleged, and generally provided those services which counsel to governmental agencies regularly furnish. He also arranged for neighborhood registration and the investigation of election law complaints, helped supervise office routine during vacation periods, and performed "other duties" which plaintiff delegated to him. The efficiency of his service is not drawn into question on this proceeding.

On January 25, 1968, following successive changes in the composition of its membership, defendant board passed its controversial resolution No. 40 which directed the county treasurer to discontinue payment of salary or other remuneration to Hanifin "or to any other person appointed to the position of Counsel, Commissioner of Registration and Superintendent of Elections and to remove his name from the list of current employees". The county treasurer has complied with the mandate of the resolution and plaintiff has since administered his office without benefit of his own counsel.

Defendants justify their action by arguing that although plaintiff may hire and fire his administrative personnel, he is without authority to engage his own counsel, and that whatever legal representation plaintiff, being a state officer, requires is obtainable only from the Attorney General. Plaintiff rejoins that the board has usurped his exclusive power

to remove appointees of his office and that there is no limit upon his power to engage assistants other than the statutory annual budget ceiling of $655,000 fixed by the Legislature. Subject to that sole restriction plaintiff argues that all expenses in connection with personnel appointments must be paid by the defendant board, citing *N. J. S. A.* 19:31–2 and *N. J. S. A.* 19:32–2.

In support of their position defendants rely upon the following statutes:

*N. J. S. A.* 52:17A–11:

"No officer, department, board, body, commission or instrumentality of the State Government shall employ any person to act as attorney, counsel, solicitor, legal assistant or other legal adviser to such officer, department, board, body, commission or instrumentality. Nor shall such officer, department, board, body, commission or instrumentality of the State Government employ any person in any legal capacity for the purpose of giving legal advice or rendering legal services, but such officer, department, board, body, commission or instrumentality may employ an attorney-at-law under full-time employment solely in the performance of administrative functions entailing the hearing of issues and determining facts in order that the said officer, department, board, body, commission or instrumentality may perform his or its functions as required by law; provided, however, that no such attorney shall act in a legal capacity in the prosecution of any charge or complaint before any such officer, department, board, body, commission or instrumentality."

*N. J. S. A.* 52:17A–4, which provides that the Attorney-General shall:

"* * * * * * * *

(e) Act as the sole legal adviser, attorney or counsel, notwithstanding the provisions of any other law, for all officers, departments, boards, bodies, commissions and instrumentalities of the State Government in all matters other than those requiring the performance of administrative functions entailing the enforcement, prosecution and hearing of issues as imposed by law upon them; and represent them in all proceedings or actions of any kind which may be brought for or against them in any court of this State; and shall likewise interpret all statutes and legal documents, inspect and approve contracts and titles and otherwise control their legal activities.
* * * * * * * *

(*g*) Attend generally to all legal matters in which the State or any officer, department, board, body, commission or instrumentality of the State Government is a party or in which its rights or interests are involved."

*N. J. S. A.* 52:17A–12:

"The Attorney-General may assign an assistant Attorney-General, a deputy Attorney-General or an assistant deputy Attorney-General to serve in any legal capacity in or for any officer, department, board, body, commission or instrumentality of the State Government on a part-time or full-time basis whenever, in the judgment of the Attorney-General, such assignment will contribute to the efficiency of the operation of such office, department, board, body, commission or instrumentality, but such member of the Division of Law shall remain under the supervision and control of the Attorney-General while so serving and his compensation shall be payable solely from appropriations made to the Department of Law and Public Safety."

*N. J. S. A.* 52:17A–13:

"No special counsel shall be employed for the State or for or by any officer, department, board, body, commission or instrumentality of the State Government except by authority of the Attorney-General, and then only with the approval of the Governor, and provided that appropriations have been made therefore, unless the matter be of such an emergency and shall be so declared by the Governor."

For these enactments to apply, plaintiff must be an officer of the State Government.

The office of superintendent of elections was created by *L.* 1923, *c.* 9, which transferred powers and duties theretofore exercised under *L.* 1918, *c.* 210, by the prosecutor of the pleas, an official whose status as an officer of the State Government is beyond question. *Board of Public Utility Com'rs of New Jersey v. Lehigh Valley R. R. Co.,* 106 *N. J. L.* 411 (*E. & A.* 1929). The Superintendent in counties of the first class is appointed by the Governor with the advice and consent of the Senate and holds office for a term of five years from the date of appointment and until his successor is appointed and qualified. *N. J. S. A.* 19:32–1. The holder of this office is also designated Commissioner of Registration.

*N. J. S. A.* 19:31–2. He is empowered to investigate complaints on voter registration by visiting, inspecting and interrogating in order to enforce the statute. *N. J. S. A.* 19:32–5. He may issue subpoenas, the disregard of which is punishable as a misdemeanor. *N. J. S. A.* 19:32–6. He has access to and may inspect any and all signature copy registers, and for refusal to deliver same to the superintendent's office local officials may be found guilty of a misdemeanor. *N. J. S. A.* 19:18–1. He may direct landlords to keep permanent ledgers, *N. J. S. A.* 19:32–8, and may take possession of and seal any ballot boxes—which must remain sealed in the absence of a Superior Court order. *N. J. S. A.* 19:32–11. It is a misdemeanor for a district election board to disregard the superintendent's order not to permit a certain person to vote. *N. J. S. A.* 19:32–15. He also has all the powers of police and peace officers, *N. J. S. A.* 19:32–21, and may remove those violating the Act from the polling place, *N. J. S. A.* 19:32–35, or arrest them, *N. J. S. A.* 19:32–22. Police officers, constables and other peace officers who fail to comply with the superintendent's request to assist in making an arrest are guilty of a misdemeanor. *N. J. S. A.* 19:32–22. He prepares sample ballots, *N. J. S. A.* 19:14–21, collects certificates from municipal clerks, furnishes the county clerks with descriptions of the district lines, *N. J. S. A.* 19:9–2, keeps the registry books, *N. J. S. A.* 19:18–7, and investigates those lists prior to elections, *N. J. S. A.* 19:32–15. The Legislature determines the superintendent's allowable expenditures, *N. J. S. A.* 19:32–2. The commissioner has charge of permanent registration of all eligible voters, *N. J. S. A.* 19:31–2, prepares registers and poll books, *N. J. S. A.* 19:4–6, has custody and control of all voting machines, *N. J. S. A.* 19:32–49, and has broad duties concerning absentee and military service balloting, *N. J. S. A.* 19:57–22.

The duties imposed upon this dual office are of considerable scope and magnitude.

In *McDonald v. Board of Chosen Freeholders, Hudson County,* 99 *N. J. L.* 393 (*E. & A.* 1924), the board of chosen

freeholders appealed from a writ of *mandamus* requiring it
to make budgetary provision for paying the salary and ex-
penses of the superintendent of elections and his appointees.
One ground of appeal was that the statute itself was uncon-
stitutional as a special law regulating the internal affairs of
Hudson and Essex Counties only. Rejecting this claim, the
court dwelt upon the statewide nature and purpose of the
legislation:

"The answer to this contention is contained in the opinion of
the Supreme Court in the original litigation between these parties
relating to this subject-matter. It is there pointed out that the
purpose of the statute is to provide for honest elections in counties
of the first class; *that it is a matter of the gravest importance to
the people of the whole state that elections should be fairly and
honestly conducted in every county of the state;* that it is a matter
of common knowledge that in sparsely settled districts it is not
necessary to provide expensive machinery in order to procure an
honest expression of the popular will at the polls; that there is
no need in such districts of that vigilance, supervision or regulation
which is required in densely populated municipalities; that, conse-
quently, where a necessity arises to add to the machinery of govern-
ment additional machinery in certain localities for the purpose of
attaining purity in general elections, it is within the legislative
power to supply such machinery without burdening other localities,
which are not in need of it, with the expense of such machinery, and
that the Legislature was the sole judge whether the necessity existed
in Essex and Hudson counties by reason of their crowded districts
and large population, and that its decision in that regard is not
open to question. 98 *N. J. L.* 386. *The purpose of the statute, as is
indicated by the above statement, was to protect our citizens, no
matter in what part of the state they might live, from being de-
prived of or injured in, the enjoyment of their rights as voters by
the corruption of the ballot box in Hudson or in Essex County; and
an act which undertakes to do this*—that is, to provide for the
purity of elections in the state by making it difficult to put into
execution a scheme for the corruption of the ballot box in any part
thereof, and so partially destroy the value of the franchise of every
voter in the state—*is an act passed for the benefit of the whole state,
and not one which merely regulates the internal affairs of the counties
in which the act is made operative.*" (at *pp.* 397–398; emphasis sup-
plied)

This reasoning appears to articulate the philosophy of
other decisions in which certain officers and boards were said

to be state officers, even though the performance of their duties were confined to a particular area of the State—usually a county. *State v. Jefferson,* 90 *N. J. L.* 507, 508 (*E. & A.* 1917), involving a county prosecutor; *State ex rel. Police Com'rs of Jersey City v. Pritchard,* 36 *N. J. L.* 101, 102, 118 (*Sup. Ct.* 1873), involving police officials; *Karp v. High Point Park Commission,* 131 *N. J. Eq.* 249 (*Ch.* 1942), affirmed 132 *N. J. Eq.* 351 (*E. & A.* 1942), involving a park commission; *Warren v. Hudson County,* 23 *N. J. Misc.* 252 (*C. P.* 1945), affirmed 135 *N. J. L.* 91 (*Sup. Ct.* 1946), holding Hudson County Board of Taxation a state board; *Goldberger v. Perth Amboy,* 16 *N. J. Misc.* 84 (*Sup. Ct. Comm.* 1938), involving a district court judge.

That plaintiff himself regards his office as an appendage of State Government is reflected in the Civil Service Request for Personnel Action form submitted by him in connection with Hanifin's appointment in 1965. Request was there made for action under *R. S.* 11:4–4(*h*), a section of the Civil Service Act dealing with the appointment of special counsel to "State Departments." It is of parenthetical interest that such an appointment may only be made with the authorization of the Attorney General. See *N. J. S. A.* 52:17A–12 and 13, *supra.*

■ I conclude that plaintiff is an officer of the State Government within the meaning of *N. J. S. A.* 52:17A–4(*e*), (*g*) and *N. J. S. A.* 52:17A–11 through 13, and that the provisions of those statutes are operative.

Plaintiff argues that even though he is a state officer within the meaning of the aforementioned statutes, the language with which the Legislature has vested in him the power of appointing personnel evinces its intent to except his office from their ordainments. *N. J. S. A.* 19:31–2 empowers him, as Commissioner of Registration, to appoint on a permanent or temporary basis "such number of persons, as in his * * * judgment may be necessary in order to carry out the provisions of this Title." *N. J. S. A.* 19:32–2 authorizes him, as Superintendent of Elections, to appoint "a chief deputy,

a chief clerk, a secretary," "custodians of voting machines" (under *N. J. S. A.* 19:48–6), and any other assistants he considers necessary to carry out the provisions of this Title, and, except as hereinafter provided, may remove the same whenever he deems it necessary * * *."

In *Gibson v. Kay,* 68 *Ore.* 589, 137 *P.* 864 (1914), the Supreme Court of Oregon specifically held that although the corporation commissioner of that state was authorized to appoint "clerks, stenographers and assistants," these terms were not comprehensive enough to allow for the appointment of attorneys or to work a repeal or amendment by implication of the laws governing legal advisers for the state and in its interest. Thus, the court decided that the commissioner had no authority to engage the services of an attorney in connection with the work of his office, and that such services could be rendered only by the attorney general.

In *Darling Apartment Co. v. Springer,* 25 *Del. Ch.* 420, 22 *A. 2d* 397 *(Sup. Ct.* 1941), the Delaware Liquor Commission had engaged counsel of its own choice to defend it in certain litigation, and the question presented was the right of the commission to take such action in the face of the attorney general's claim of priority. The commission supported its action upon statutory language contained in its enabling legislation authorizing it:

"To appoint or employ every officer or employee necessary for the carrying out of the work of the Commission and dismiss them for cause, fix their salaries or remunerations, and assign them their official titles and duties, *and to engage the services of experts and of persons engaged in the practice of a profession.* * * *"

Particularly emphasized was the italicized excerpt giving the commission general authority to engage the services of experts and those practicing a profession. Characterizing this as "entirely equivocal language," the court decided the question adverse to the commission, with this analysis:

"The Act does not mention 'counsel', 'attorney', 'actions', nor does the language suggest legal representation of any kind; while in the

cases cited by the defendant in error the statutes expressly authorized the appointment of 'counsel' or 'special counsel' by the administrative bodies. Holding in mind the accepted principle that, in the absence of express legislative restriction, the Attorney General, as the chief law officer of the State, may exercise all of the powers and authority incident to the office at common law, it is manifest that there is nothing in the Act as a whole, nor in the particular language relied on, which, either expressly or by any reasonable intendment, indicates the legislative purpose to empower the Commission to appoint its own law officer to represent the State in judicial proceedings. The language is not apt for the purpose. It is entirely consonant with the powers and duties of the Commission as an administrative body. The right of a mere administrative agency of the State to appoint its own law officer to conduct litigation in supersession of the Attorney General, and to charge the public with the incidental expense, must rest on a plain and unambiguous grant of authority. It necessarily follows that the Attorney General has the power, and it is his duty to represent the Commission in all judicial proceedings." (22 *A. 2d*, at *p.* 404)

The exclusive right of the attorney general to represent the state agency, said the court, was derived from that official's common law status as the legal representative of the sovereign and his historic identification with the public interest. Therefore, he exercises "all such power and authority as the public interest may from time to time require" in the absence of "express legislative restriction to the contrary." 22 *A. 2d*, at *p.* 403. This view prevails in New Jersey. *Board of Public Utility Comm'rs of New Jersey v. Lehigh Valley R. R. Co.*, 106 *N. J. L.* 411 (*E. & A.* 1929). Indeed, his powers and duties seem to be even broader that those at common law since the particularizations in *N. J. S. A.* 52:17A–4 are in addition to what is conferred or required "either by the Constitution or by the common and statutory law of the State * * *." Accordingly,

"In determining whether a statute confers implied authority upon a state commission or agency to appoint its own law officer in derogation of the prerogative of the Attorney General to represent such state agency in the courts, the language of such statute must be considered in the light of the office of Attorney General at common law and of the general understanding of the nature of the office and the public policy in regard thereto exhibited through the years."
7 *Am. Jur. 2d*, Attorney General, § 9.

See too Annotation, 137 *A. L. R.* 818, 826 *et seq.*

That our Legislature leaves nothing to intendment when authorizing a state agency to employ counsel other than the Attorney General appears from the following sampling of statutes:

*N. J. S. A.* 1:17–18, empowering the Election Law Revision Commission to "employ counsel"; *N. J. S. A.* 4:12A–4, authorizing the Director of Milk Control to appoint "counsel"; *N. J. S. A.* 4:25–4(*b*), authorizing the Public Market Control Commissioner to appoint "a general counsel"; *N. J. S. A.* 17:9A–275, authorizing the Commissioner of Banking and Insurance "notwithstanding any other provision of law, [to] appoint an attorney * * * who need not be a member or an employee of the Department of Law * * *"; *N. J. S. A.* 17:12B–186, authorizing the Commissioner of Banking and Insurance to appoint an "attorney or counsellor-at-law" to assist in administration of the Savings and Loan Act; *N. J. S. A.* 17:13–57, authorizing the Commissioner of Banking and Insurance to appoint "such counsel" needed to administer to credit unions; *N. J. S. A.* 27:12B–5(*q*), authorizing the New Jersey Highway Authority to appoint "attorneys"; *N. J. S. A.* 27:12C–6, authorizing the New Jersey Expressway Authority to appoint "general counsel" and "special attorneys or counsel"; *N. J. S. A.* 27:16–55, authorizing the Highway Right of Way Commission, with approval of the board of chosen freeholders, "to engage the services of an attorney"; *N. J. S. A.* 27:19–34, authorizing a county bridge commission to employ "attorneys"; *N. J. S. A.* 32:3–5(*e*), authorizing the Delaware River Port Authority "to appoint, hire, or employ counsel"; *N. J. S. A.* 32:14–4, authorizing the Palisades Interstate Park Commission to employ "counsel"; *N. J. S. A.* 32:18–6, authorizing the Interstate Sanitation Commission to appoint "legal" assistants; *N. J. S. A.* 32:20–14(4), authorizing the Delaware River Basin Water Commission to appoint "counsel"; *N. J. S. A.* 32:23–10(5), authorizing the Waterfront Commission of New York Harbor to "employ counsel"; *N. J. S. A.*

33:1-4(*f*), authorizing the Director of Division of Alcoholic Beverage Control to appoint "counsel and other legal assistants"; *N. J. S. A.* 40:36A-16, authorizing the Sanitary Sewerage District Authority to employ "counsel"; *N. J. S. A.* 40:55A-7, authorizing a municipal beach commission to employ "counsel"; *N. J. S. A.* 40:55C-7, authorizing a municipal redevelopment agency to employ "its own counsel and legal staff"; *N. J. S. A.* 40:60-25.25, authorizing a plant management commission to employ "counsel" and other "legal" assistants; *N. J. S. A.* 40:179-8, authorizing a municipal board of harbor commissioners to employ "a legal counsel"; *N. J. S. A.* 48:2-2, authorizing the Board of Public Utility Commissioners to appoint "counsel"; *N. J. S. A.* 52:9F-3, authorizing the Commission on Urban Colored Population to "employ counsel"; *N. J. S. A.* 52:27-6, authorizing the Municipal Finance Commission to appoint "counsel" and other "legal" assistants; *N. J. S. A.* 52:15-8, authorizing the Governor, "Notwithstanding the provisions of any other law to the contrary," to "appoint and commission a person to be known as counsel to the Governor," "associate counsels" and "such legal assistants as he may deem necessary"; *N. J. S. A.* 18A:65-28, authorizing the governing board of Rutgers University to exercise its power "without recourse or reference to any department or agency of the state * * *." This section also specifically provides, "The provisions of sections 11 and 13 of chapter 20 of the Laws of 1944 [*N. J. S. A.* 52:17A-11 and 13] shall not be deemed or construed to be applicable to the corporation or the university."

Both *N. J. S. A.* 19:31-2 and *N. J. S. A.* 19:32-3 were last amended as recently as 1963, without the inclusion of any specified reference to the employment of "counsel" or "attorney."

■ In *William H. Goldberg & Co. v. Division of Employment Security,* 21 *N. J.* 107 (1956), the court held that plaintiff was obligated to pay unemployment compensation taxes upon commissions paid to an insurance "solicitor"

even though the act exempted commissions paid to insurance "agents." It was noted that those states which chose to exempt commissions paid to solicitors had amended their unemployment compensation laws to conform with the language of the 1939 amendment to the Federal Social Security Act, by which commissions received by both agents and solicitors were exempted from the payment of taxes under that law. Observing that our Legislature must have "acted with knowledge of the existing provisions of the related federal statute," the wording of our statute exempting "agents" was characterized as "careful draftsmanship" evidencing a "clear intention" that commissions paid to "solicitors" not be exempted. It was stated that for the court to interpret "agents" to include "solicitors" would write into the statute the very meaning which the lawmakers deliberately eschewed. (at *pp.* 112–113). Thus was applied the rule of analogy by which reference is made to analogous statutes to ascertain a uniform course of legislative policy with regard to the subject matter at hand. 3 *Sutherland, Statutory Construction,* §§ 6102–6104 (1943). The rule would appear to be especially applicable where, as here, the numerous analogized enactments are those of the same jurisdiction as that of the statute under examination.

Since the New Jersey Legislature has spoken unequivocally of "counsel" or "attorney" over a period of years in these many instances where it chose to empower state agencies to appoint counsel, the court will not find such power by implication where the words of unmistakable meaning are pointedly omitted. What the Legislature omits the courts will not supply. *E. g. Craster v. Board of Commissioners of City of Newark,* 9 *N. J.* 225, 230 (1952) ; 50 *Am. Jur., Statutes,* 222, § 234. Omissions may only be supplied which are necessary to carry out the manifest intent of the Legislature. *Publix Asbury Corp., Inc. v. City of Asbury Park,* 18 *N. J. Super.* 286, 293 (*Ch.* 1951) affirmed 18 *N. J. Super.* 192 (*App. Div.* 1952).

I conclude, therefore, that plaintiff is not empowered to appoint legal counsel of his own choosing. Inasmuch as defendants are required under *N. J. S. A.* 19:31–2 and *N. J. S. A.* 19:32–2 to pay the salaries only of "such persons" whose appointments are authorized by these statutes—Hanifin's appointment being unauthorized—it follows that defendants are not obligated to meet the expense of his salary.

Consideration has been given to plaintiff's contention that defendants should be estopped from attacking the validity of the appointment, but circumstances do not favor the application of this device, particularly bearing in mind the defendants' status as agencies of government. *Adler v. Department of Parks and Public Property, Irvington Tp.,* 20 *N. J. Super.* 240, 243 (*App. Div.* 1952).

Motion by defendants granted. Motion by plaintiff denied.