**RINCON BAND OF MISSION INDIANS,**
Appellants,

v.

**COUNTY OF SAN DIEGO and J. C.
O'Connor, Sheriff for the County
of San Diego, Appellees.**

**Elizabeth RICCI, Appellant,**

v.

**COUNTY OF RIVERSIDE et al.,**
Appellees.

**Lela MADRIGAL, Appellant,**

v.

**COUNTY OF RIVERSIDE et al.,**
Appellees.

Nos. 71–1927, 72–1256 and 71–2043.

United States Court of Appeals,
Ninth Circuit.

March 18, 1974.

Rehearing Denied June 11, 1974.

**2**

George Forman, Oakland, Cal. (argued), for appellants in No. 71–1927.

Bertram McLees, Jr., County Counsel, Anthony Albers, Deputy County Counsel (argued), San Diego, Cal., for appellees in No. 71–1927.

Robert S. Pelcyger, Native American Rights Fund, Boulder, Colo., for amicus curiae in No. 71–1927.

George Forman, Oakland, Cal. (argued), Monroe E. Price, Los Angeles, Cal., for appellant in No. 72–1256.

Ray T. Sullivan, Jr., County Counsel, and Steven A. Broiles, Deputy County Counsel (argued), Riverside, Cal., for appellees in No. 72–1256.

Russell W. Bledsoe, Los Angeles, Cal. (argued), and Hubert C. Swanson, Placentia, Cal., for appellant in No. 71–2043.

Ray T. Sullivan, Jr., County Counsel, and Steven A. Broiles, Deputy County Counsel, (argued), of Kinkle, Rodiger, Graf, Dewberry & Spriggs, Riverside, Cal., Robert L. Meyer, U. S. Atty., and Eva R. Datz, Asst. Atty. Gen., Washington, D.C., Kent Frizzell, Asst. Atty. Gen., Robert S. Lynch, and Edmund B. Clark (argued), Washington, D.C., for appellees in No. 71–2043.

Kent Frizzell, Asst. Atty. Gen., Jacques B. Gelin and Dirk D. Snel, Attys., Washington, D.C., for amicus curiae in Nos. 72–1256 and 71–2043.

Before BROWNING and TRASK, Circuit Judges, and MURPHY, District Judge.*

MURPHY, District Judge:

Each of these three appeals is from a separate judgment of the United States District Court of California, the first from the Southern District, the other two from the Central District. The appeals were consolidated for argument, since each purported to present a similar legal issue, *viz.*, whether ordinances of Riverside and San Diego Counties relating to gambling, building and outdoor

---

* Honorable Thomas F. Murphy, Senior United States District Judge, Southern District of New York, sitting by designation.

festivals are applicable to Indian reservations within those counties by virtue of Public Law 280 by which Congress, in 1953, granted to several states, including California, civil and criminal jurisdiction over Indian reservations. 67 Stat. 588; 18 U.S.C. § 1162; 28 U.S.C. § 1360.

There is, however, in each appeal a vexing initial question of jurisdiction either of this Court or the District Court. Firstly, we will consider such a question in *Rincon*.

In *Rincon*, the Rincon Band of Mission Indians, with a governing body duly recognized by the Secretary of Interior, sought a declaratory judgment and injunctive relief from the enforcement on its reservation of a San Diego gambling ordinance. The reservation is located within an unincorporated area of San Diego County, California, and held in trust by the United States. Jurisdiction was asserted under 28 U.S.C. §§ 1331 (federal question), 1362 (Indian Tribes), and 2201 (declaratory judgment).

The San Diego ordinance[1] has been in effect since 1960 and prohibits the use of property for gambling purposes and betting on card games, such as draw poker. On October 1, 1970, the Rincon Band adopted a tribal ordinance authorizing the establishment of a card room on the reservation where certain card games not prohibited by state statute could be played. The revenue derived therefrom would be for the benefit of the Band.

On cross motions for summary judgment the District Court (Turrentine, J.), in a reasoned opinion, granted the motion of the defendants. In substance, it found (a) that the county gambling ordinance was a state law within the meaning of Public Law 280, and (b) that such ordinance was not an encumbrance on trust property or a regulation of the use of trust property in any manner inconsistent with any federal statute. (Rincon Band of Mission Indians v. County of San Diego, 324 F.Supp. 371 (S.D.Cal.1971).

No consideration was given to the question nor was it briefed, *i. e.,* whether the "case or controversy" requirement of Article III of the Constitution is satisfied by the general allegation of a threat of enforcement against the Rincon Band of Mission Indians or its members of the county gambling ordinance.

Accordingly, we detail the relevant facts contained in the affidavits and exhibits that were before the District Court on the motions for summary judgment.

On October 1, 1970, the plaintiff, through its tribal council, passed a tribal ordinance permitting limited gambling activities not prohibited by the Penal Code of the State of California. The ordinance is described as "An ordinance of the Rincon Band of Mission Indians, Rincon Reservation, to provide for the authorization and establishment of a card room on the Rincon Reservation, Valley Center, California." The purpose of the ordinance is "to remove any possible question as to the propriety of tribal members participating in traditional tribal games of chance and to encourage the economic development and progress of the Rincon Indian Reservation" through the establishment of a tribally run card room.

"The people of the Rincon Reservation have regularly held fiestas each year in order to raise funds for tribal development. At various times, activities at these fiestas included traditional tribal games of chance, and often many non-Indians would come to the fiestas and participate in these games. Several persons have been arrested for gambling at our fiestas." (Affidavit of Frank Mazzetti, Jr., Acting Chairman of the Rincon Band of Mission Indians).

1. Card Rooms and Gambling, San Diego County Code, Title 3, Div. 7, Ch. I, §§ 37.101–37.105.

On October 8, 1970, in a letter to the County of San Diego's counsel, the Band's attorneys alleged that several members of the Rincon Band were informed by representatives of the San Diego County Sheriff's Department that under the county gambling ordinance all gambling in unincorporated areas of the county was illegal and that the ordinance would be enforced against persons on the Rincon Reservation.

In that letter of October 8th and in subsequent correspondence the Band's attorneys requested a written statement of county policy as to the county's jurisdiction to enforce its gambling ordinance on the Rincon Reservation.

On October 23, 1970, the county sheriff, defendant J. C. O'Connor, replied that " * * * State law, as well as the County ordinance, is quite specific relative to gambling, and all of the laws of San Diego, State, Federal and County, will be enforced within our jurisdiction", and that " * * * we feel that the laws of the State and the County are not made for a few, but meant to include everyone, and they shall be administered in that manner."

All will agree that federal courts may act only in the context of a justiciable case or controversy. Benton v. Maryland, 395 U.S. 784, 788, 89 S.Ct. 2056, 23 L. Ed.2d 707 (1969); Muskrat v. United States, 219 U.S. 346, 356, 31 S.Ct. 250, 55 L.Ed. 246 (1911).

Recently the Supreme Court, in a declaratory judgment action, restated the test of justiciability: "The test to be applied of course, is the familiar one stated in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941): 'Basically the question in each case is whether * * * there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Lake Carriers Ass'n. v. MacMullan, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972).

Our duty, therefore, is to resolve whether there is a substantial controversy between the Rincon Band of Mission Indians and the County of San Diego and its sheriff of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

The Rincon Band claims that its members were under a threat of prosecution if they proceeded with plans to establish and maintain a gambling facility on the reservation.

We are satisfied that in the present case the threat is clearly of a general nature, and from the record it cannot be determined if there has been a history of prosecution or non-prosecution under the county ordinance. The record indicates that the threat consisted of appellant's allegations that members of the Sheriff's Department informed a few members of the Band that all gambling is illegal under the county ordinance, and Sheriff O'Connor's response to the Indians' inquiry that the state and county laws are specific as to gambling and all the laws of the county would be enforced within his jurisdiction. Similar threats in Poe v. Ullman, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961) ("* * * in the course of his public duty he [the state's attorney] intends to prosecute any offenses against Connecticut law, and that he claims that use of and advice concerning contraceptives would constitute offenses"), and in United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (possible interference with plaintiffs' rights by the Civil Service Commission under its rules), failed to meet justiciability requirements.

Our brother Browning feels that Poe and United Public Workers are distinguishable. In Poe the statute prohibiting the use of contraceptive devices and giving medical advice in the use of such devices was three-quarters of a century old. In Rincon the statute was enacted in 1960, certainly enough time to establish a policy of enforcement or nonenforcement, particularly in the light of

the gambling activities at the annual fiestas held at the reservation. Judge Browning's position is that there is nothing to indicate that the *Rincon* ordinance was not being enforced. The burden, however, was on the plaintiff to show by affidavit that the statute was being enforced. It failed in this regard. The only fact before the District Court was a general threat from the Sheriff, not much different than the allegation in the *Poe* complaint quoted above. As Mr. Justice Frankfurter said of such allegation: "The lack of immediacy of the threat described by these allegations might alone raise serious questions of non-justiciability of appellants' claims. See United Public Workers v. Mitchell, 330 U.S. 75, 88, 67 S.Ct. 556, 91 L.Ed. 754." Poe v. Ullman, *supra,* 367 U.S. at 501, 81 S.Ct. at 1754.

With reference to *United Public Workers,* Judge Browning suggests that there was a lack of a threat of enforcement. In *United Public Workers* there was, in fact, a threat of enforcement albeit a general threat. Mr. Justice Reed, in describing the threat, said: "No threat of interference by the Commission with rights of these appellants appears beyond that implied by the existence of the law and the regulations." 330 U.S. 75 at 91, 67 S.Ct. 556 at 565, 91 L.Ed. 754. He described them further:

"The threats which menaced the affiants of these affidavits in the case now being considered are closer to a general threat by officials to enforce those laws which they are charged to administer * * *, than they are to the direct threat of punishment against a named organization for a completed act that made the *Mail Association* [Railway Mail Association v. Corsi, 326 U.S. 88, 65 S.Ct. 1483, 89 L.Ed. 2072] and the *Hill* [Hill v. Florida, 325 U.S. 538, 65 S.Ct. 1373, 89 L. Ed. 1782] cases justiciable." *Id.* at 88, 67 S.Ct. at 564.

The threat in *Rincon* was of no greater specificity or immediacy.

Although Sheriff O'Connor asserted that he had been and was then "enforcing the card room and gambling ordinances to all persons equally in the unincorporated areas of the county", there is no proof or suggestion of any specific instances of prosecution under the ordinance. While it is true that appellants have alleged that at their annual fiestas arrests were made, it is nevertheless unclear as to whether the arrests were for violations of the county ordinance or violations for some other reason, and whether they were Indians or non-Indians does not appear. Accordingly, it can hardly be said on this record that there was a history of prosecution under the San Diego gambling ordinance.

Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), one of last year's abortion decisions by the Supreme Court, is not to the contrary. In that case the physician-appellants were found to have presented a justiciable controversy. The Court said:

"* * * The physician is the one against whom these criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions. The physician-appellants, therefore, assert a sufficiently direct threat of personal detriment. They should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. Crossen v. Breckenridge, 446 F.2d 833, 839–840 (CA6 1971); Poe v. Menghini, 339 F.Supp. 986, 990–991 (Kan.1972)." 410 U.S. at 188, 93 S.Ct. at 745.

The Sixth Circuit, in finding a case or controversy to be present in *Crossen,* said that it was not a case "in which there is an apparent state policy of non-enforcement of a criminal statute making its 'mere existence * * * insufficient grounds to support a federal court's adjudication of its constitutionality * * *.' Poe v. Ullman, 367 U.S. 497, 507, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989." 446 F.2d at 838. The court found that there was "an actual threat of pros-

ecution for performing abortions" because of the history of prosecution under the statute. Also, the physician-plaintiff alleged that he was unable to practice medicine to the best of his professional judgment and ability because of the criminal statute and that he was deterred and hindered in treating patients asking for abortions, thus claiming an interference with the rights of the pregnant women coming to him for treatment. In *Rincon*, the record does not indicate that there is a policy of enforcement of the county ordinance nor do plaintiffs allege actual interference with fundamental rights as does the plaintiff in *Crossen*.

In Poe v. Menghini, *supra*, the court found prosecution to be imminent because of a letter sent to the hospital advising them to cease performing abortions and because of evidence showing an ongoing investigation of the hospital, including harassment and coercion of patients leaving the hospital. *Poe* is distinguishable from *Rincon*, in which the record cannot support a finding of imminent prosecution.

Also, in Doe v. Bolton the Supreme Court found that the Georgia statute was "recent and not moribund" and the successor to another Georgia statute under which physicians were prosecuted. Again, *Rincon* is distinguishable, since no history of prosecution has been shown. *Cf*. Younger v. Harris, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Judge Browning relies on Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), which concededly we cannot distinguish. Perhaps it is a special case involving First Amendment issues that makes it *sui generis*. In *Epperson* plaintiff, a teacher, challenged an anti-evolution statute. She was not threatened with prosecution, and there was no record of any prosecution under the statute. The statute may have been "more of a curiosity than a vital fact of life." *Id*. at 102, 89 S.Ct. at 269. In any event, the most recent pronouncement by the Supreme Court reenforces

our opinion that *Epperson* is not controlling and that *Rincon* does not present a case or controversy. See, O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L. Ed.2d 674 (1974).

We think it abundantly clear that the general threat of enforcement of the San Diego ordinance and the absence of any arrests for violating such ordinance are insufficient to meet the case or controversy requirements of Article III of the Constitution and the "actual controversy" requirement of the Declaratory Judgment Act, 28 U.S.C. § 2201, and any decision in such circumstances would lack sufficient immediacy and reality.

Judgment reversed, and complaint dismissed.

■ In *Ricci* there is a similar question of justiciability. Ricci, an Indian woman with an allotment within the Pechanga Reservation in the County of Riverside, had almost completed the construction of a house on her allotment when the defendant's agents posted the house with a notice calling attention to the requirement of a Riverside County ordinance that there be a building permit, and a subsequent notice served on plaintiff's husband to obtain a building permit or face criminal prosecution. In addition to failing to secure a building permit, Ricci had failed to comply with the Riverside County Building Code requiring galvanized pipe be used in the plumbing system and that a portion of such pipe be wrapped in a protective covering.

Thereupon Mrs. Ricci instituted an action in the District Court of California, Central District, for an injunction restraining the County of Riverside from requiring a building permit and for a declaratory judgment that Riverside County Building Code (Ordinance No. 457) was not applicable to a building on Indian land held in trust by the United States. Jurisdiction was claimed pursuant to 28 U.S.C. § 1331(a), which provides:

"(a) The district courts shall have original jurisdiction of all civil actions

wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

A bench trial was had exclusively on affidavits, a stipulation of facts, and exhibits. There was no testimony.

Judgment was entered on September 9, 1971, (1) enjoining defendants from requiring plaintiff to obtain a building permit and (2) declaring the Riverside County Building Code did apply to plaintiff and the Pechanga Indian Reservation. Plaintiff appeals from the entire judgment and *not that part of the judgment, as she states in her brief, which made the declaration of the applicability of the Riverside County Building Code.*

United States, in its *amicus* brief, has suggested "since Mrs. Ricci's immediate grievance, as expressed in her complaint and brief, related to her ability to build her home free of county control, she has substantially prevailed in the District Court. *Amicus* therefore submits that the question of Riverside County's powers to regulate other construction on Elizabeth Ricci's trust allotment is purely artificial and hypothetical on the present record and therefore moot in this case at this time." In California v. San Pablo & T. R. R., 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747 (1893), the Supreme Court held California's action for taxes moot after the defendant paid them, despite the fact that the state still wished a decision on the merits and other cases turned, by stipulation, on the outcome of this one. It held:

"[T]he state has obtained everything that it could recover in this case by a judgment of this court in its favor. The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion

may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." 149 U.S. at 314, 13 S.Ct. 878.

More than three years have gone by, and we have not been advised that any prosecution has been instituted by the county against Mrs. Ricci for any violations of the Building Code. We hold that whatever threat there was of prosecution because of other possible violations of the Building Code does not create a substantial controversy of sufficient immediacy and reality to warrant consideration of that part of the judgment below declaring the Riverside County Building Code applied to the plaintiff and the Pechanga Indian Reservation. See our discussion in *Rincon, supra,* pp. 5-6. Mrs. Ricci's appeal, therefore, is dismissed as moot. Having arrived at that conclusion, "we are precluded from considering any other issues presented for review" (Blackmun, J., concurring in O'Shea v. Littleton, *supra,* 414 U.S. at 504, 94 S.Ct. at 680.

Although no one has raised the issue, we call to the District Court's attention the matter of its own jurisdiction.

Under the federal question jurisdiction, 28 U.S.C. § 1331, one of the two requirements for jurisdiction is that the matter in controversy be more than $10,000.

We explain in Quinault Tribe of Indians v. Gallagher, 368 F.2d 648, 654 (9th Cir. 1966), what the "matter in controversy" means:

"By 'matter in controversy' is meant the subject of litigation, the matter upon which the issue is brought and issue is joined. Smith v. Adams, 130 U.S. 167, 175, 9 S.Ct. 566, 32 L.Ed. 895. The value of the right

sought to be gained determines the amount in dispute. Federated Mutual Implement & Hardware Insurance Co. v. Steinheider, 8th Cir., 268 F.2d 734, 738."

Cf., Packard v. Banton, 264 U.S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596 (1924).

An examination of every affidavit, exhibit and stipulation in the record reveals only two instances where money is mentioned. On page 10 of the affidavit of plaintiff she states, in part, that the material for the building of the home cost $4,000.

The amount in controversy is specifically denied by defendant's answer (Rec. p. 187, par. 1). However, there is a stipulation signed by the attorneys for the parties, dated the blank day of June, 1971 and filed in the court below on July 15, 1971, which reads as follows:

"II

"JURISDICTION AND VENUE

"Federal jurisdiction and venue for the trial of this matter is present on the following grounds:

"a) Jurisdiction of this court as to action No. 71–1134–EC is conferred by and founded upon 28 U.S.C. § 1331 in that this is an action arising under the Constitution, laws or treaties of the United States and the value of the rights sought to be protected exceeds Ten Thousand Dollars ($10,000.00) exclusive of interest and costs. * * * "

■ It is hornbook law that jurisdiction of a District Court cannot be stipulated to by the parties, and that the court *sua sponte* must satisfy itself that jurisdiction exists. California v. La Rue, 409 U.S. 109, 112–113 fn. 3, 93 S. Ct. 390, 34 L.Ed.2d 342 (1972); Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934); Continental Ins. Co. of N. Y. v. Cotten, 427 F.2d 48,

51 (9th Cir. 1970); Canadian Indemnity Co. v. Republic Indemnity Co., 222 F.2d 601, 603 (9th Cir. 1955); Law of the Federal Courts, Charles Alan Wright (1970), § 66.

■ There being no proof that the matter in controversy exceeded $10,000, there was no jurisdiction of the District Court. The prayer for a declaratory judgment fails, too, since an action for declaratory judgment has no jurisdictional basis *per se.* Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1957); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

■ In *Madrigal*, the Indian plaintiff sought to enjoin the captioned defendants from enforcing a temporary restraining order issued by the Superior Court of California. Such order was issued on August 12, 1970, on Riverside County's *ex parte* petition to restrain *not the plaintiff* but one Ernest Sagado, Jr. and five hundred John Does from holding an outdoor festival on the Cahuilla Reservation on August 21, 22 and 23, 1970, until necessary licenses or permits were obtained from Riverside County. The order also temporarily restrained Sagado and the John Doe defendants from erecting structures for human use in preparation for the festival. Additionally, plaintiff Madrigal sought an injunction against the named defendants from enforcing or attempting to enforce in the future against her on her 340 acres of land in the Cahuilla Reservation Riverside County's ordinances numbered 348, 457 and 522; she also prayed for compensatory and punitive damages. She alleged that the District Court had jurisdiction by virtue of the Fourteenth Amendment, Sections 1 and 5 thereof, and 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §§ 1983 and 1985, and that the matter in controversy exceeded the sum of $10,000 exclusive of interest and costs.

Her complaint and amended complaint,[2] ignoring the dictates of F. R.Civ.P. 8(e)(1), alleged in substance that she was a member of the Cahuilla Indian Tribe and was an "assignee by Cahuilla Indian custom" of 340 acres on the Cahuilla Indian Reservation near the town of Anza, Riverside County, California; and that such reservation land is owned in fee by the United States in trust for the Cahuilla Band of Mission Indians.

After numerous allegations professing her love and devotion to racial unity, Indian affairs, Indian culture, environment and the ubiquitous "ecology", she alleged that for some time she had been *negotiating* with Ernest Sagado, Jr. for the operation of an Indian festival, "traditionally" called Fiesta de Vida, and Sagado started to make arrangements and construct facilities therefor. She then alleged that Riverside County ordinances numbered 457, 348 and 522, relating to structures for human use, zoning and outdoor festivals, are not applicable to her land on the Cahuilla Indian Reservation, and accused the defendants Sullivan, Riverside County's counsel, and Seeley, McCall, Davis and Clark, four of the Supervisors of the Board of Supervisors of Riverside County, and Riverside County of conspiring against her in the following fashion:

As part of the plan to stifle criticism toward land developers who threaten the environment and ecology of Riverside County, to harass and persecute plaintiff in order to suppress her opposition to those who want to damage the environment and ecology of Riverside County and knowing that the Riverside County ordinances numbered 457, 348 and 522 were not applicable to Indian reservation land, *they nevertheless agreed, under color of their official position* and under subterfuge of enforcing such ordinances, *they would deprive plaintiff of the "equal privileges and immunities under the laws" and injure her in person and in her property; depriving her of exercising her rights and privileges as a citizen to silence her criticism* of destructive practices of land developers, to prevent her from communicating with others the necessity of preserving the environment and ecology of Riverside County and the necessity of protecting the rights of Indians and other minority groups. As a further part of the scheme she alleged that defendants McCall, Seeley and Davis met clandestinely and in violation of the Brown Act [3] [sic] and agreed to use the ordinances for the purposes of denying to plaintiff funds that would be available from the festival for the communication of her beliefs in Indian culture, and concludes *in haec verba*:

> "Plaintiff is informed and believes, and upon such information and belief alleges, that defendants, and each of them, intend once again to repeat the sordid chapters of California history which resulted in brutality and callousness closely approaching genocide against the California Indian population. Those Indians with courage enough to defend their culture and their loved onces [sic] against commercial exploitation are subject to the retaliation planned and perpetuated against them by defendants, as set forth herein."

She then alleged that pursuant to such conspiracy the defendants secured without notice the temporary restraining order against Ernest Sagado, Jr., and that on August 14, 1970, Sagado applied for a writ of prohibition to the Fourth Appellate District Court of Appeal of the

---

2. The amended complaint was filed late in the proceeding at the urging of the District Court in order to add as parties defendants the United States by its Secretary of the Interior and the Cahuilla Band of Indians. After the plaintiff complied by bringing in the United States and some fifty-nine named Indians, such defendants who had appeared were dismissed from the case on motion of the United States Attorney. No appeal was taken.

3. Probably Cal.Gov't. Code, §§ 54950 *et seq.*

State of California to prohibit the Superior Court for the County of Riverside from enforcing such order on the land of the plaintiff, which application she alleges was denied on August 17, 1970.

Thereafter, Madrigal instituted this action on August 24, 1970, the day after the festival was to have ended.

After hearings [4] on plaintiff Madrigal's application for a temporary restraining order, preliminary injunction and permanent injunction, the District Court entered judgment on February 16, 1971 dismissing the complaint. The appeal presently before this Court is from that judgment.

It was during these hearings that the Riverside County action in the Superior Court of California was removed by the defendant Sagado to the District Court, but during the course of the hearings on Madrigal's application for an injunction it was remanded to the state court. No appeal has been taken therefrom.

The complaint, on its face, readily suggests a number of complex jurisdictional questions, but in view of the evidence submitted at the hearings and our conclusion that the District Court lacked jurisdiction, we need not become involved in a jurisdictional thicket. The problems would be substantial: such as whether a state civil action comes within the applicability of the Federal Anti-injunction Statute, 28 U.S.C. § 2283, in an action for an alleged conspiracy to violate the plaintiff's civil rights, or whether the teaching of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), of federal abstention and deference to state courts applies. See, Gibson v. Berryhill, 411 U.S. 564, 573–576, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); Burger, Ch.J., concurring, in Mitchum v. Foster, 407 U.S. 225, 243–244, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); and whether plaintiff has standing to enjoin a state action in which she is not a party; see Linda R.

S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973), where the Supreme Court said:

"Although the law of standing has been greatly changed in the last 10 years, we have steadfastly adhered to the requirement that, at least in the absence of a statute expressly conferring standing, federal plaintiffs must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction. See e. g., Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166–167, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Cf. Laird v. Tatum, 408 U.S. 1, 13, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)." (Footnotes omitted.);

and whether some defendants are "persons" under 42 U.S.C. § 1983 or whether some or all have immunity.

Accordingly, we turn to what the plaintiff proved as distinguished from what she alleged. This is important because appellant's brief disregards both the pleadings and the proof; refers to exhibits not offered or received in evidence; and refers to a rule of practice (probably Cal.Civ.Pro.Code, § 446) not found in the Federal Rules of Civil Procedure.

To begin, it is an astounding fact that out of 447 pages of the transcript of four days of hearings on plaintiff's application for a temporary restraining order, a preliminary injunction and permanent injunction, only 157 pages are devoted to testimony, and of that number 116 pages relate to plaintiff's testimony and her five witnesses.

Since the essence of plaintiff's claim for a permanent injunction is the alleged conspiracy by most of the defend-

4. The hearings took place on August 31, 1970, September 1, 1970, September 28, 1970 and January 25, 1971.

ants to deprive plaintiff of her civil rights, it is a shocking revelation to discover that she offered not one word of testimony to substantiate such a charge. In addition to her own testimony and that of five witnesses, including the defendant County's trial counsel, the record is absolutely barren of any proof of any concert of action by defendants to "stifle criticism toward land developers"; "to harass and persecute plaintiff in order to suppress her opposition to those who want to destroy the environment and ecology of Riverside County", "or knowing the Riverside County ordinances numbered 457, 348 and 522 were not applicable to Indian reservations they nevertheless agreed under color of their official position * * * they would deprive plaintiff of the equal privileges and immunities under the law", etc. etc.

Plaintiff's proof at trial related to the "lease of her property" on the Cahuilla Reservation to Ernest Sagado, Jr. and his uncle, Joseph Sagado, as a site for holding the festival, which by prior agreement with plaintiff was in turn subleased to one Nick Avenetti, who was not a member of the Cahuilla Band. The written lease and sublease were for a term of 90 days, and the consideration running to the lessor was $10,000. It was, however, not approved by the Bureau of Indian Affairs as was required. 25 C.F.R. § 131.1 *et seq.* (1961). Not surprising, none of the three witnesses, including the plaintiff, who testified about the lease, produced the original or a copy. It was agreed, however, that the lease expired early in August 1970. Plaintiff testified that after the lease terminated it was she who was putting on the festival, assisted by Ernest Sagado, Jr.

There was a conflict in the evidence presented by plaintiff and her witnesses as to whether such a lease needed the approval of the Tribal Council. It was agreed, however, that permission to hold the festival was sought of the Council, which voted 22 to 4 against having the festival and also voted to ask the Sheriff of Riverside County to prevent it. Plaintiff testified that she was a Cahuilla Indian and "owned land on the Reservation having inherited it from her father who was an assignee". It was her testimony, too, that the platform and ramadas and the well that were being constructed were halted when the temporary restraining order was obtained by Riverside County. She denied receiving any consideration for the lease from the Sagados, and testified that she did not contract with anybody to construct any improvements on the property; she had no relationship with any contractor or paid anyone any money; had no idea how many people were expected to attend the festival or the price of the tickets. One witness, Ernest Sagado, Jr., testified that he hoped for an attendance of 15,000 people at $15 a ticket.

There was testimony that arrangements were being made for 25 to 30 rock bands and that advertisements were placed in the Los Angeles Free Press. There was testimony by one of plaintiff's witnesses, too, that the Fiesta de Vida was not a traditional fiesta and had no religious significance.

The District Court's findings of fact, although not binding because of our conclusion of its lack of jurisdiction, are substantially as we have herein outlined except it found, in Finding 15, "The allegations of Plaintiff's Amended Complaint, which are inconsistent with the findings hereinbefore set forth, are *false.*" (Emphasis ours.) We should add that the findings were drafted by the defendants' counsel and adopted by the court, a practice which has been strongly disapproved. United States v. El Paso Natural Gas, 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964).

Since no conspiracy mentioned in § 1985 of Title 42 U.S.C. or a conspiracy to violate 42 U.S.C. § 1983 was proved or attempted to be proved, appellant's pleaded claim of federal jurisdiction pursuant to 28 U.S.C. § 1343, the jurisdictional counterpart of 42 U.S.C. §§ 1983 and 1985, must fail. The same is

true for jurisdiction alleged under 28 U.S.C. § 1331 (federal questions), since there was no proof that any defendant, singularly or in concert with one or more other defendants, subjected or caused to be subjected the plaintiff to the deprivation of any rights, privileges or immunities secured by the Constitution or the Fourteenth Amendment. Even if there was such proof, there was no proof that the matter in controversy exceeded $10,000, exclusive of interest and costs.

Accordingly, the judgment of the District Court dismissing the complaint is affirmed on the ground that the District Court had no jurisdiction of the subject matter. Fed.Rules Civ.Proc. 12(h)(3).

BROWNING, Circuit Judge:

I concur except as to Rincon Band of Mission Indians v. County of San Diego, No. 71–1927. The controversy in Rincon is as real and immediate as those in Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), and United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), are distinguishable. Unlike Poe v. Ullman, *Rincon* involves a challenge to a fairly recent ordinance (effective April, 1960). There is nothing to indicate the ordinance was not being enforced. On the contrary, the sheriff stated, though perhaps not as directly as he might, that the ordinance was being enforced and would continue to be. The holding in United Public Workers v. Mitchell rested not only on a lack of a threat of enforcement but also on plaintiffs' failure to specify the kinds of proscribed political activity they intended to engage in. As the Supreme Court noted, the plaintiffs' "generality of objection [was] really an attack on the political expediency of the Hatch Act, not the presentation of legal issues." 330 U.S. at 89, 67 S.Ct. at 564.